In the Matter of **EDUCATIONAL FUND OF** the **ELECTRICAL INDUSTRY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 604, Docket 34165.**

United States Court of Appeals, Second Circuit.

Argued March 10, 1970.

Decided May 8, 1970.

Harold Stern, New York City (Norman Rothfeld, New York City, of counsel), for appellant.

Richard M. Hall, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for the Southern District of New York, Patricia M. Hynes, Asst. U. S. Atty., of counsel), for appellee.

Before SMITH, KAUFMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge.

Appellant, the Educational Fund of the Electrical Industry, instituted this action against the United States in the United States District Court for the Southern District of New York for a refund of $168,338.53 in income taxes, interest and penalties paid on account of withholding taxes due for the years 1958 through 1961. The district court entered a judgment granting appellant recovery against the United States in the amount of $45.76, representing a refund of the tax due on a $140 payment made by appellant to one individual who was shown at trial to have reported the payment on his income tax return and to have paid the tax due. The judgment dismissed appellant's complaint in all other respects, and appellant appeals from the dismissal. We find the decision of the district court to be correct and affirm the judgment below.

## I.

Appellant is a trust fund of the Educational Committee [1] of the Joint Industry Board of the Electrical Industry,[2] a body created pursuant to the collective bargaining agreement in effect between Local 3 of the International Brotherhood of Electrical Workers, a labor union representing electrical workers employed in and around New York City, and four employer associations of electrical contractors and some 200 independent employers. In 1957, the Educational Committee established a program under which electricians covered by the collective bargaining agreement could attend courses in basic thinking processes, civics, constitutional rights and related subjects for one week annually at Bayberry Land, an estate on Long Island owned by the ECH Holding Company, a New York corporation, the stock of which was held by the trustees of the Pension, Hospitalization and Benefit Plan of the Electrical Industry. Since the electricians attending the Bayberry school would receive no wages during the week they attended, the Educational Committee determined, after negotiations between the employer representatives and the union representatives on the Committee, that each attending electrician should receive $140 upon satisfactory completion of the course as partial compensation for lost wages and expenses. The money to make these payments was to be taken out of extra funds in the Vacation Expense Fund, a fund administered by the Vacation Committee of the Joint Industry Board into which the employers contributed 4% of their weekly production payroll and from which vacation benefits were distributed to employees. All electricians employed or eligible for employment by a contractor who contributed to the Vacation Expense Fund could attend the Bayberry school. The $140 payments were to be made by the Educational Fund, which was under the trusteeship of an equal number of union and employer representatives. The collective bargaining agreement was modified in 1958 to incorporate provisions establishing the course at Bayberry school and providing for the payment of the $140 as "an expense allowance." The Educational Fund was subsequently operated pursuant to the terms of the Educational Fund of the Electrical Industry Agreement, an agreement "effective as of June 18, 1957," executed by the parties to the col-

1. The Educational Committee, established in 1949 to administer a scholarship program for children of electricians represented by Local 3 of the International Brotherhood of Electrical Workers, is composed of an equal number of union and employer representatives.

2. The Joint Industry Board is composed of 12 representatives of Local 3 of the International Brotherhood of Electrical Workers, 12 representatives of the employers and one representative of the public.

lective bargaining agreement in 1959 in order to qualify the Fund for tax exempt status.

The school began operations in June of 1957. About 30 electricians attended each week, and the course was given 40 to 45 weeks a year from its inception in 1957 through 1961, the tax years here involved. Attending electricians traveled to the school at their own expense, stayed on the grounds from Sunday through Saturday and attended lectures, discussion groups and motion pictures. Purchase of books was not required, but the electricians frequently spent a small amount for books offered for sale by the school. At the end of the week, a check for $140 was delivered to each electrician who had satisfactorily completed the course. The checks were drawn on the funds transferred to the Educational Fund from the Vacation Expense Fund. Each check was signed by two trustees of the Educational Fund, one a representative of the union and the other a representative of the employers. The checks were transmitted for disbursement to the teacher in charge of conducting the school. No checks were given to those who had violated rules of conduct or who had not been in attendance for the full week.

The Educational Fund did not withhold income tax from the $140 checks. At the end of each year, however, the Educational Fund sent a letter to each electrician who had attended the school during the year, advising that the $140 payment would be considered income subject to taxation and should be reported on the individual's income tax return.

Because of appellant's failure to withhold and to file the required returns, the Internal Revenue Service assessed a tax deficiency, plus interest and the penalties provided under Int. Rev. Code of 1954 § 6651, against the Educational Fund for the years 1958 through 1961, in the total amount of $167,769.87. That amount, plus additional accrued interest in the amount of $568.66 was paid by the Educational Fund, which thereafter timely filed a claim for a refund and instituted this action in the district court.

On appeal, the Educational Fund challenges the correctness of the district court's dismissal of its complaint on the grounds that (1) the $140 payments were not wages subject to withholding tax within the meaning of Int. Rev. Code of 1954 § 3401(a), (2) the Educational Fund was not an "employer" as defined in Int. Rev. Code of 1954 § 3401(d) liable for the payment of the withholding tax under Int. Rev. Code of 1954 § 3403 and (3) in any event the Educational Fund had reasonable cause for failing to withhold the tax and file the required returns and therefore the district court erred in upholding the penalty assessed under Int. Rev. Code of 1954 § 6651. Appellant also argues that the individual electricians to whom the $140 payments were made should be presumed, in the absence of evidence of nonpayment, to have paid the income tax due.

## II.

The $140 payments were properly characterized as wages under Section 3401(a), which defines wages as "all remuneration * * * for services performed by an employee for his employer * * *." The $140 payments to those who attended the school represented part of the benefit package which was negotiated as part of the wage structure under the collective bargaining agreement in effect between the employers and the union as representative of the electrical workers. The payments ultimately derived from the employers and represented a portion of the agreed upon remuneration for services performed by the employees within the intent of Section 3401(a), just as do payments from pension and vacation funds. See Treas. Reg. § 31.3401(a)–1(b); Rev. Rul. 57–316, 1957–2 Cum. Bull. 626.

The Educational Fund, pointing to the language of the collective bargaining agreement, attempts to characterize the payments as "an expense allowance," and thus not wages subject to withholding. There is no merit in this contention.

The payments bore no relation to any expenses actually incurred by those electricians who attended the school. Moreover, the language of the collective bargaining agreement is not controlling as to the proper characterization of the payments. See Knetsch v. United States, 364 U.S. 361, 367, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960).

### III.

■ The $140 payments being properly characterized as wages, the Educational Fund was liable for the payment of the tax required to be withheld.[3] Int. Rev. Code of 1954 § 3403 provides that "the *employer* shall be liable for the payment of the tax required to be deducted and withheld under this chapter * * *." (emphasis added). An "employer" is defined in Section 3401(d) as:

"* * * the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that—

"(1) If the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term 'employer' * * * means the person having control of the payment of such wages * * *."

Appellant argues that under the common law tests generally applied in determining the existence of an employer-employee relationship, it cannot be held to be the employer of the electricians attending the Bayberry school. This is of course true but irrelevant. Although the Educational Fund was not the employer, in the normal sense, of the electricians attending the Bayberry school, it was liable *as* an "employer" for withholding taxes on the $140 payments because, under Section 3401(d) (1), it was the "person having control of the payment of such wages" in the situation where "the person for whom the individual performs or performed the service does not have control of the payment of wages for such services * * *."

■ The Educational Fund claims that it was a mere "conduit" for the payment of the funds and that it had only the "ministerial" duty of issuing and transmitting the $140 checks to the teacher in charge of the school, who made the final decision as to who was eligible to receive a check upon satisfactory completion of the course. Appellant plainly misinterprets the statutory scheme. The purpose of Section 3401(d) (1) is to provide that the person actually paying the wages (instead of the employer who makes a payment into a fund for the benefit of all his employees) is obligated to withhold the taxes. See United States v. Fogarty, 164 F.2d 26, 32 (8th Cir. 1947). It is obvious that in this case it would have been quite impossible for the *real* employers to calculate, at the time the contributions were originally made to the union trust fund, the withholding tax due as to each employee who later received a $140 payment for successfully completing the Bayberry course. Moreover, although the teacher in charge of the school had primary responsibility for determining who had successfully completed the course and was thus eligible to receive a check, the Educational Fund functioned as the actual paymaster for the Bayberry school program. Pursuant to its general powers under the Educational Fund of the Electrical Industry Agreement and the collective bargaining agreement, the Educational Fund had legal control over the payment of the money. See Century Indemnity Co. v. Riddell, 317 F.2d 681, 686 (9th Cir. 1963). The situation is quite similar to that set forth in the example given in Treas. Reg. § 31.3401(d)–1(f), which states that a trust is an "employer" where "wages, such as certain types of pensions or retired pay, are paid by [the] trust and the person for whom the services were performed has no legal control over the payment of such wages * * *." The Commissioner of Internal Revenue has ruled that a vacation trust fund, operated in a manner similar to the Educational Fund, was the "employer" of

---

3. See Int.Rev.Code of 1954 § 3402(a).

the union employees for withholding tax purposes and obligated to withhold taxes from the vacation allowances granted to each employee. Rev. Rule 57–316, 1957–2 Cum. Bull. 626. We perceive no reason for a different result in this case. Holding the Educational Fund liable as an "employer" for the withholding taxes on the $140 payments is clearly within the intent of Section 3401(d). See Century Indemnity Co. v. Riddell, *supra* at 687–692; Conf. Rep. No. 510, 78th Cong., 1st Sess. 30–31 (1943); 8A Mertens, The Law of Federal Income Taxation § 47A–03, at 20–21 (Zimet ed. 1964).

### IV.

Because of appellant's failure to file withholding tax returns and pay the tax, the Service assessed a penalty under Section 6651 against the Educational Fund of 25% of the total tax due for the years 1958 through 1961. Under Section 6651, the penalty is properly assessed "unless it is shown that [the] failure [to file a required return] is due to reasonable cause and not due to willful neglect * * *."

■ Appellant urges that, since it relied on the advice of counsel, it must be found to have had "reasonable cause" for failing to file withholding tax returns and pay the withholding tax. Ordinarily, such reliance is "reasonable cause" for failure to comply with the internal revenue laws. See Haywood Lumber & Mining Co. v. CIR, 178 F.2d 769, 771 (2d Cir. 1950). In this case, however, the Educational Fund, in December of 1957, the first year of the Bayberry school's operation, requested through its counsel a ruling from the District Director of Internal Revenue on the $140 payments. The District Director ruled on January 16, 1958, that "the amounts so paid are considered to be subject to withholding * * * pursuant to the provisions of Section 3401(a) and 3401(d) (1) of the 1954 Code."

■ "Reasonable cause" has been equated with the exercise of "ordinary business care and prudence." Treas. Reg. § 301.6651–1(a) (3); Haywood Lumber & Mining Co. v. CIR, *supra* at 770–771. Having requested an advisory ruling from the District Director, and having received a reply clearly advising appellant that it was liable for the withholding tax on the $140 payments, we believe appellant failed to exercise ordinary business care and prudence in determining neither to pay the withholding taxes nor to file returns.[4] See Estate of Mayer v. CIR, 351 F.2d 617 (2d Cir. 1965) (per curiam), cert. denied, 383 U.S. 935, 86 S.Ct. 1065, 15 L.Ed.2d 852 (1966). Knowing of the District Director's advisory ruling, appellant voluntarily and intentionally failed to file returns and pay the withholding tax. In this sense its conduct was not only imprudent, but tantamount to "willful neglect." See Hatfried, Inc. v. CIR, 162 F.2d 628, 632 (3d Cir. 1947); United States v. Murdock, 290 U.S. 389, 394–395, 54 S.Ct. 223, 78 L.Ed. 381 (1933). Accordingly, we hold that the district court did not err in determining that the penalty was properly assessed.

### V.

■ The Educational Fund introduced evidence at trial that one of the electricians who attended the Bayberry school, William Hanson, reported the $140 on his income tax return and paid the tax, and the district court in its judgment awarded appellant a refund for the amount of the tax on the payment of this individual, plus interest from the date the tax was paid. Appellant urges that, especially in view of the fact that every electrician who received a $140 check for attending the Bayberry school was

---

4. The Government suggests in its brief that since withholding tax is a divisible tax the Educational Fund could have challenged the District Director's ruling in a refund suit by paying the tax for only one attending electrician. See Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960).

advised in writing that the amount should be reported as income on his individual tax return, it should be presumed in the absence of evidence of non-payment that every other electrician-student also reported the payment and paid the tax. However, to obtain a credit against its liability to pay the withholding tax, the burden was on the Educational Fund to show payment of the tax by any individual electrician-student. Treas. Reg. § 31.3402(d)–1; 8A Mertens, The Law of Federal Income Taxation § 47A.11, at 57–58 (Zimet ed. 1964).

The judgment of the district court is affirmed.[5]

---

5. We regard as frivolous appellant's contention that the trustees of the Educational Fund were not empowered under the terms of the Educational Fund of the Electrical Industry Agreement to withhold and pay taxes on the $140 payments.