**NYSA–ILA CONTAINER ROYALTY FUND by its Trustees John BOWERS, Albert Cernadas, Joseph F. Colazzo, Walter L. Sullivan, John J. Farrell, Robert B. Murphy, Michael E. Maher and A.L. Aberson, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE and United States of America, Appellees.**

**No. 996, Docket 87–6267.**

United States Court of Appeals, Second Circuit.

Argued April 21, 1988.

Decided May 11, 1988.

Donato Caruso and Ernest L. Mathews, Jr., New York City (C.P. Lambos, Lambos & Giardino, and Thomas W. Gleason, New York City, on the brief), for appellants.

Cynthia Keeffe Dunne, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., and Richard W. Mark, Asst. U.S. Atty., New York City, on the brief), for appellees.

Before TIMBERS, MESKILL and KEARSE, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant NYSA–ILA Container Royalty Fund ("appellant") appeals from a judgment entered January 5, 1988 in the South-

ern District of New York, Richard Owen, *District Judge*, 684 F.Supp. 783, dismissing the complaint after the court, by an order dated October 9, 1987, (1) had granted the motion of the Commissioner of Internal Revenue to dismiss the complaint pursuant to Fed.R.Civ.P. 12(c), (2) had granted the motion of the United States for summary judgment pursuant to Fed.R.Civ.P. 56(b), and (3) had denied appellant's motion for summary judgment. Appellant commenced this action originally to obtain a refund of withheld employee income taxes and taxes under the Federal Insurance Contributions Act ("FICA") and the Federal Unemployment Tax Act ("FUTA"). On appeal, appellant claims that it is entitled to a refund of employment taxes withheld because employee benefits for which the withholding was performed were not in fact "wages" and hence not taxable.

## I.

The case arises out of a technological development in shipping known as "containerization"—the use of truck-size metal receptacles for transporting cargo in ships. This development has resulted in a drastic reduction in the demand for longshore workers. Because of the impact of containerization, the International Longshoremen's Association, AFL–CIO ("ILA"), engaged in collective bargaining with the New York Shipping Association ("NYSA"), in an attempt to protect longshore workers from job displacement. The NYSA and ILA subsequently created a labor-management trust fund, called the NYSA–ILA Containerization Fund (the "Fund"). The purpose of the Fund was to provide a depository for royalties paid, pursuant to an arbitration agreement, by steamship carriers using containerization. The Fund also was designed to allow for joint labor-management control of these royalties. The royalties in the Fund later were transferred to appellant.

Collective bargaining between the NYSA and ILA eventually resulted in two types of benefits to be paid to long-shore workers: Guaranteed Annual Income ("GAI") benefits, and Container Royalty ("CR") benefits.

GAI benefits originated as part of a 1964 agreement between the NYSA and the ILA to organize the Guaranteed Annual Income ("GAI") Program, the purpose of which was to guarantee a fixed minimum annual level of compensation for dock workers for lost job opportunities. The GAI Program currently guarantees payments equivalent to the amount a worker would earn if he or she worked 1900 hours per year. Thus, GAI benefits are intended to close the gap between longshore workers' governmental benefits and a total income equal to the guaranteed level. GAI benefits therefore are available only to workers who are considered underemployed (i.e., working less than the guaranteed number of hours per year). To qualify for GAI benefits, a worker must (1) have worked at least 700 hours in a pre-contract "qualifying year", and (2) have worked less than the guaranteed number of hours in the year in which benefits are sought.

CR benefits originated in 1968 when the NYSA and ILA agreed to restructure the royalty program. To qualify for CR benefits, a worker must either (1) have worked at least 700 hours per year, or (2) have accrued certain kinds of credits deemed the equivalent of 700 work-hours in the year preceding payment. The equivalent credits may be earned by a receipt of either unemployment compensation, workers' compensation or GAI benefits. Unlike GAI benefits, CR benefits are distributed equally to all eligible members of the work force; they are not limited to those employees who worked less than the guaranteed number of hours per year.

On May 30, 1979, the IRS determined that GAI benefits were not subject to employment taxes. The IRS based this determination on its finding that GAI benefits were supplemental unemployment compensation benefits ("SUB benefits"). The Internal Revenue Code ("IRC") defines SUB benefits in pertinent part as:

> "benefits which are paid to an employee because of his involuntary separation from the employment of the employer

(whether or not such separation is temporary) resulting directly from a reduction in force, the discontinuance of a plant or operation, or other similar conditions". 26 U.S.C. § 501(c)(17)(D)(i) (1982). In general, SUB benefits are not subject to FICA or FUTA withholding, or withholding for income tax before 1971.[1] The IRC defines "wages" as "all remuneration ... for services performed by an employee for his employer, including the cash value of all remuneration (including benefits) paid in any medium other than cash". 26 U.S.C. § 3401(a) (Supp. III 1985). FICA and FUTA employ nearly identical definitions of wages. 26 U.S.C. §§ 3121(a), 3306(b) (Supp. III 1985).[2]

In proceedings before the IRS, appellant asserted that CR benefits were a form of SUB benefits and that it therefore should receive a refund for income tax withholding on CR benefits for 1970. In a Technical Advice Memorandum dated August 1, 1984, the IRS determined that CR benefits were *not* SUB benefits, but that they were wages. It found that CR benefits were wages because they were "payments for past services" and "part of the total remunerative package" provided for by the agreement between NYSA and the ILA. It found that they were not SUB benefits because they were distributed to all employees, even those who were fully employed, and thus "the fundamental statutory requirement of an involuntary separation from employment [was] not a prerequisite" to receiving the benefits. The IRS therefore ruled that appellant was liable for income tax withholding in 1970 and would be required to withhold FICA and FUTA taxes as of 1975. Appellant accordingly paid $2,320,720.86 in FICA and FUTA withholding due for the years 1975–1979 and $657,434.10 in income tax withholding for 1970. On June 28, 1985, appellant applied for a refund. The IRS disallowed the claim. The IRS therefore has held that CR benefits, but not GAI benefits, are taxable.

Appellant then commenced the instant action to challenge the determination of the IRS and to obtain a refund of the FICA, FUTA and income taxes. The district court held that CR benefits were "wages" because they applied to all workers, including those who were fully employed. Accordingly, it granted appellees' motion for summary judgment and dismissed the complaint. The court did not address directly the related question of whether CR benefits are SUB benefits. This appeal followed.

Appellant claims on appeal that the district court erred in holding CR benefits are wages. It also claims that CR benefits are SUB benefits, an issue it considers to be a separate matter.

## II.

In *STA of Baltimore–ILA Container Royalty Fund v. United States,* 621 F.Supp. 1567 (D.Md.1985), *aff'd,* 804 F.2d 296 (4 Cir.1986), the District Court of Maryland considered a similar royalty fund and concluded its payments were wages. Appellees assert that *STA of Baltimore* is precisely in point because both the instant case and the *STA of Baltimore* case involved a fund (1) that came out of collective bargaining, and (2) that was distributed primarily on the basis of a worker's satisfaction of a 700–hour work requirement.

Appellant counters, as it did in the district court, that *STA of Baltimore* is distinguishable. It asserts that, since workers in the instant case could be eligible for the fund in other ways aside from the 700–hour work requirement needed in *STA of Baltimore,* the fund here should be treated differently. Appellant points out that, while in *STA of Baltimore* the *only* way a worker could become eligible for the bene-

---

**1.** After 1970, the IRC required income tax withholding for SUB benefits. 26 U.S.C. § 3402(*o*) (1982). Thus, even if appellant were to prevail in its claim that CR benefits are SUB benefits, it would not be entitled to a refund for income tax withholding after 1970. Appellant acknowledges this and is seeking a refund only for 1970.

**2.** The FICA and FUTA statutes both define "wages" as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash". 26 U.S.C. §§ 3121(a), 3306(b) (Supp. III 1985).

fit was to perform 700 hours of "actual work", in the instant case a worker could become eligible for CR benefits by performing the 700 hours of work *or* by receiving an equivalent amount of unemployment benefits, workers' compensation benefits or GAI benefits. Appellant asserts that, if it is possible to receive the benefits without actually working, then the benefits will not be in exchange for work and thus will not fit within the definition of wages, which is "remuneration ... for services performed by an employee for his employer".

The district court addressed this argument. We hold that it correctly rejected it. The court acknowledged that it is not possible in this case, as it was in *STA of Baltimore,* to be certain that all payments were made in exchange for work. It nevertheless concluded that it would be "inappropriate in these circumstances to relieve [appellant] from its FICA/FUTA withholding duties" in part because "[t]he tax laws must be construed to favor—indeed require —the collection of concededly due tax revenues". We are satisfied that the district court's conclusion was correct. Moreover, the equivalent means of achieving eligibility all are contractually recognized as work equivalents. The IRS therefore justifiably could treat them as work equivalents. *See Educational Fund of the Elec. Indus. v. United States,* 426 F.2d 1053 (2 Cir.1970) (holding benefits paid to employees out of fund required by collective bargaining agreement are "wages" for employment tax purposes).

Appellant also asserts that the issue of whether CR benefits are SUB benefits is not simply the converse of the issue of whether they are wages. It argues that benefits may meet the definition of "wages", yet still fall into the category of "SUB benefits", since SUB benefits in essence are an exception carved out of the category of wages. Appellees respond that the two categories are "mutually exclusive". Assuming appellant's argument regarding the relationship between SUB benefits and wages has some force, we nevertheless hold that CR benefits may not be characterized as SUB benefits. As stated above, SUB benefits are "benefits which are paid to an employee because of his involuntary separation from ... employment ... resulting directly from a reduction in force, the discontinuance of a plant or operation, or other similar conditions". The IRS has interpreted "involuntary separation" to include an involuntary reduction in the total number of hours worked. *See* Rev.Rul. 77–43, 1977–1 C.B. 151. In the instant case, however, eligibility for CR benefits depends on neither separation from employment nor reduction in hours. Indeed, CR benefits are paid equally to all eligible workers, even those who are fully employed.

We hold that CR benefits essentially are exchanged for work and are "wages". We affirm substantially for the reasons set forth in Judge Owen's excellent opinion of October 9, 1987, 684 F.Supp. 783.

Affirmed.

