SHEET METAL WORKERS LOCAL 141 SUPPLEMENTAL UNEMPLOYMENT BENEFIT TRUST FUND, Plaintiff–Appellee,

v.

**UNITED STATES of America, Internal Revenue Service, Defendant–Appellant.**

No. 94–3689.

United States Court of Appeals, Sixth Circuit.

Argued June 9, 1995.

Decided Sept. 5, 1995.

Harold George Korbee (argued and briefed), Wood & Lamping, Cincinnati, OH, for plaintiff-appellee.

Gilbert S. Rothenberg, Frank P. Cihlar (argued), Paula K. Speck, Gary R. Allen, Acting Chief (briefed), U.S. Dept. of Justice, Appellate Section Tax Div., Washington, DC, for defendant-appellant.

Before: WELLFORD, NELSON, and RYAN, Circuit Judges.

WELLFORD, Circuit Judge.

We are presented with a tax refund case that raises a question of first impression in this circuit: whether payments to employee-beneficiaries derived from the liquidation of a supplemental unemployment benefit trust fund are "wages" within the meaning of the Federal Insurance Contributions Act ("FICA") and the Federal Unemployment Tax Act ("FUTA"). The district court concluded that the payments in this case were not wages. For the reasons stated, we **REVERSE**.

**I.**

The relevant facts involve little, if any, dispute. In 1975, Sheet Metal Workers Local No. 141 ("Local 141") and Sheet Metal Contractors Association of Greater Cincinnati, Inc., ("Contractors") established the Supplemental Unemployment Benefit Trust Fund ("Fund") pursuant to the provisions of

a collective bargaining agreement (CBA).[1] The purpose of the Fund was to provide supplemental unemployment benefits, accident and sickness disability benefits, and severance pay to union members who were involuntarily unemployed. The Contractors contributed all of the monies in the Fund, and the benefits were to be paid from the contributions as well as interest, dividends and income derived therefrom.

The Fund established an individual account for each union member. Each beneficiary received credit in his or her account for each month that a contractor contributed, or was legally obligated to contribute, on his or her behalf. A contractor's obligation to contribute to the Fund was based on the number of hours worked by each covered beneficiary on a monthly basis. A beneficiary's benefits were not limited to the amount of the contractor's contribution. A beneficiary could draw benefits up to $10,000.00 in excess of the amount contributed by his or her employer. If a beneficiary did not draw from his account an amount equal to the contribution by his or her employer, the beneficiary retained a "positive account balance."

In December of 1986, Local 141 merged with Local 224 of Dayton, Ohio and Local 98 of Columbus, Ohio. The new local, Local 24, presented its members with an alternative benefit plan which was intended to replace the benefit plan formerly offered by the Fund. The union membership voted to merge the Fund into the new benefit plan offered by Local 24. Following this vote, the Contractors and Local 24 negotiated a new CBA which discontinued all contributions to the Fund. The Contractors and Local 24 subsequently terminated the Fund and decided to distribute all assets to the beneficiaries.

In December of 1989, the trustees of the Fund distributed to the beneficiaries a total of $1,839,292.00. Each beneficiary received a proportionate payment in accord with his or her "positive account balance." The Fund defined the positive account balance as "an account that has an aggregate of more contributions paid into the Trust Fund then the aggregate of benefits paid out to the employ-

ee at the time the claim for benefits is made." Following the distribution of the positive account balance, $1,341,388.00 in assets remained for distribution. The Fund labeled these assets the "residual account balance" and the assets were to be distributed to "all living Plan participants who ha[d] established five or more consecutive years of participation in the ... Plan." The trustees prorated each beneficiary's payment based on the beneficiary's years of service.

The Fund conceded that the payments from the positive account balance were wages within the meaning of FICA and FUTA and were, thus, subject to withholding tax. Prior to distributing the residual account balance, however, the Fund sought a private letter ruling from the Internal Revenue Service ("IRS") as to whether the residual account balance constituted wages for which FICA and FUTA required employer withholding. In its ruling, the IRS found the residual balance payments taxable under both FICA and FUTA. Although the Fund disagreed, it paid to the IRS—in conformance with the letter ruling—$88,516.60 in FICA taxes and $9,256.63 in FUTA taxes, or a total of $97,773.23. The Fund subsequently sought a refund of those monies, which the IRS denied. This action followed.

Both parties moved for summary judgment, and the district court referred the matter to a magistrate judge. In support of its motion, the Fund submitted the affidavit of Donald Geis, a member of the Fund's board of trustees. In his affidavit, Geis averred that the residual balance payments were not wages because they were not distributed in return for services rendered to the Contractors but were merely payments from a "reserve generated by prudent investments and competent administration of the contributions made to the Fund over a period of years dating back to 1975." The IRS did not submit evidentiary materials in opposition to the allegations in the Geis affidavit. Relying on the truth of the affidavit, the magistrate judge recommended that the district court grant the Fund's motion for summary judgment. Without further analysis,

1. This agreement established the Fund to qualify as a tax exempt employee benefit plan under the Taft–Hartley Act and the Employee Retirement Income Security Act of 1974 (ERISA).

the district court adopted the report and recommendation of the magistrate judge and ordered the IRS to refund $97,773.23, plus interest.

## II.

Since the district court resolved this case on summary judgment, we review its decision *de novo*. *Henegar v. Banta*, 27 F.3d 223, 225 (6th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 664, 130 L.Ed.2d 599 (1994). We apply the same legal standard, Federal Rule of Civil Procedure 56(c), utilized by the district court. Rule 56(c) provides that a party is entitled to summary disposition "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). In making this determination, we view the evidence in the light most favorable to the non-movant. *Henegar*, 27 F.3d at 225 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)).

> Rule 56(e) also provides that
>
> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED.R.CIV.P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing requirement of Rule 56(e)). In the case at bar, the magistrate judge relied heavily on Rule 56(e) because the IRS failed to offer any rebuttal evidence to counter the Geis affidavit regarding the source of funds used for the residual account payments. The Fund argues that the IRS cannot dispute this finding on appeal and that the magistrate judge was correct in concluding that the finding was dispositive in this case. The IRS responds that it did not rebut the Geis affidavit because the truth of his assertion therein is immaterial to whether the residual account payments were wages under FICA and FUTA. In other words, the IRS challenges the conclusive effect given to the Geis affidavit by the magistrate judge.

We agree with the IRS' contention that the source of the residual account payments is not dispositive as to whether the payments are wages. If the original contributions to the Fund had come from Local 141 or individual union members, then the magistrate judge's finding might be supportable. In that case, the residual account distributions would be income derived from the sound administration of the union's money. Article VI, section 6.1 of the trust agreement, however, clearly indicates that only the employers—not individual union members—contributed to the Fund. That same section expressly acknowledges that "interest, dividends and other income" derived from the employers' contributions were to be used to pay benefits. Therefore, the fact that the residual account payments derived from wise investment of the corpus is not dispositive as to whether the payments were wages. Employees cannot claim that income derived from investment of the trust corpus is the fruit of their ownership when they never contributed to the corpus itself. *Compare Lane Processing Trust v. United States*, 25 F.3d 662, 655–66 (8th Cir.1994) (holding that payments to employees from trust fund were wages and not the fruit of sound investments because employees had no ownership interests in the corpus of the trust and distributions were based on length of service to employer). Accordingly, we find that the magistrate judge erred, as a matter of law, by giving conclusive effect to the Geis affidavit.

## III.

FICA and FUTA define wages as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash." 26 U.S.C. §§ 3121(a), 3306(b). Employment is defined as "any service, of whatever nature, performed ... by an employee for the person employing him." *Id.* §§ 3121(b)(A),

3306(c)(A).[2] "Taken together, subsections (a) and (b) of § 3121 [and subsections (b) and (c) of § 3306] define 'wages,' therefore, as 'all remuneration' for 'any service.'" *STA of Baltimore–ILA Container Royalty Fund v. United States,* 621 F.Supp. 1567, 1570 (D.Md. 1985), *aff'd,* 804 F.2d 296 (4th Cir.1986).

▮ The IRS contends that the only relevant inquiry is whether the payments were remuneration for services rendered to the contributing contractors. The IRS suggests that, because a beneficiary's length of service with a participating contractor determined his or her eligibility for residual balance payments, the payments were remuneration for past services. In short, the IRS contends that "payment tied to hours of past service is quintessentially remuneration for employment." Brief of Appellant at 14.

The IRS cites the trust agreement to support its contention that the disputed payments were contingent on past service to employers. For example, a covered employee could only acquire credits (*i.e.,* contributions from a contractor) by working more than sixteen hours in a month, and an employee had to earn twenty-five credits within a two year period to obtain minimal eligibility. The only exception to the work requirement was for work equivalents (*e.g.,* injury or illness) compensated under the state worker's compensation law and, if an employee experienced a two year break-in-service with a participating contractor, the employee forfeited all credits. In addition, an employee's eligibility for a share of the residual account balance was conditioned solely on the employee being a living participant in the Fund for five or more consecutive years, and the amount of the employee's payment was directly proportional to the length of the employee's participation in the Fund.

The IRS relies on *STA of Baltimore–ILA Container Royalty Fund v. United States,* 621 F.Supp. 1567 (D.Md.1985), *aff'd,* 804 F.2d 296 (4th Cir.1986), *NYSA–ILA Container Royalty Fund v. Commissioner,* 847 F.2d 50 (2d Cir.1988) and *Lane Processing Trust v. United States,* 25 F.3d 662 (8th Cir.1994). In *STA of Baltimore,* the International Longshoreman's Association (ILA) and the Steamship Trade Association (STA) established a trust fund, pursuant to the terms of a CBA, by which members of the union could draw benefits to compensate them for lost employment due to a technological advance in ship loading known as "containerization."[3] *STA of Baltimore–ILA Container Royalty Fund,* 621 F.Supp. at 1569. Under the CBA, the STA employers contributed to the fund based on the degree to which a given ship was compatible with containerization. Any union member who worked at least 700 hours in one of the years covered by the CBA was eligible for benefits. *Id.* at 1570. After deducting the cost of administering the fund as well as a reserve from the STA's total contributions, the trustees of the fund distributed equal shares of the balance to eligible union members. *Id.* After paying FICA and FUTA taxes to the IRS, the trustees sought a refund. *Id.* When the IRS failed to act on the requested refund, the trustees brought a civil action in federal district court. *Id.*

The trustees argued that the containerization fund did not owe FICA and FUTA taxes because the distributions were not wages. *Id.* at 1571. In rejecting this contention, the district court relied primarily on the fact that the trust agreement conditioned eligibility for payments on past service to an STA employer. *Id.* at 1571–72. The court noted that a union member's eligibility turned on

---

**2.** The Fund does not contest that it was the employer for the purposes of FICA and FUTA. Thus, if the disputed payments were "wages," the Fund clearly served as the employer for withholding purposes. *See Otte v. United States,* 419 U.S. 43, 50–51, 95 S.Ct. 247, 253–54, 42 L.Ed.2d 212 (1974) (holding that bankruptcy trustee was the "employer" within the meaning of FICA and FUTA for the purpose of withholding where trustee distributed wage payments to employees of bankrupt employer). In *In re Laub Baking Co.,* 642 F.2d 196, 198–99 (6th Cir.1981), we followed *Otte* in holding that a bankruptcy trust-

ee was an employer under FICA and FUTA when making priority wage payments to employees for services rendered to the debtor. We noted that, under FICA and FUTA, an employer "'means 'the person having control of the payment of such wages.'" *Id.* at 198 (quoting *Otte,* 419 U.S. at 50, 95 S.Ct. at 253 (quoting 26 U.S.C. § 3401(d)(1))).

**3.** "Containerization" reduced the need for manual labor to load cargo on to ships.

**250**

obtaining a minimum of 700 hours of past service to an STA employer and that time off for sickness or injury did not count in the computation of the minimum hour requirement. *Id.* at 1572. Consequently, the district court held that the payments were wages within the meaning of FICA and FUTA. *Id.* at 1575. On appeal, the United States Court of Appeals for the Fourth Circuit affirmed, adopting the district court's opinion as its own. *See* 804 F.2d 296 (4th Cir.1986).

Another circuit in a similar case involving a container royalty fund followed *STA of Baltimore. NYSA–ILA Container Royalty Fund*, 847 F.2d at 52–53 (holding that payments to longshoreman from a containerization fund were wages within the meaning of FICA and FUTA). In that case, however, eligibility was not determined solely by satisfying a minimum work requirement. *Id.* Though a longshoreman still needed 700 hours of past service to be eligible for benefits, a union member could satisfy the requirement by counting periods when he or she was receiving unemployment and worker's compensation. *Id.* at 51. The trustees argued that, unlike *STA of Baltimore*, it was theoretically possible for a union member to receive payments without ever working for a shipper. *Id.* at 52–53. Consequently, the trustees contended that the payments could not be remuneration for past services. *Id.* The Second Circuit rejected this argument, noting that the alternate means of satisfying the minimum work requirement were "all . . . contractually recognized as *work equivalents.*" *Id.* at 53 (emphasis added).

In a more recent case, *Lane Processing Trust*, still another circuit court considered whether distributions from a trust, which held the stock of a company in receivership for the benefit of the employees, were wages within the meaning of FICA and FUTA. *Lane Processing Trust*, 25 F.3d at 665. In anticipation of liquidation, the sole shareholders of Lane Processing Company, a closely held corporation, placed their shares of stock in trust, naming the employees as beneficiaries. *Id.* at 663. The trustees reversed the company's financial fortunes, ultimately selling the company to Tyson Foods at a sub-

stantial premium. *Id.* at 664. In accord with the terms of the trust document, the trustees distributed a portion of the proceeds from the sale to the employees. *Id.* The amount of each employee's distribution turned on two factors: 1) where the employee worked, and 2) the employee's length of service with the company. *Id.* Only current employees were eligible. *Id.* The trustees conceded that the payments were subject to federal income tax, but disputed whether the payments were wages within the meaning of FICA and FUTA. *Id.* The Eighth Circuit concluded that the proceeds from the sale of the stock were payments in remuneration for past services because eligibility was "based on factors traditionally used to determine employee compensation, specifically, the value of the services performed by the employee, [and] the length of the employee's employment." *Id.* at 665.

■ The Fund argues that these cases are distinguishable on the grounds that the holdings in those cases turned on a finding that the trust fund payments were directly attributable to services rendered to employers. The Fund contends that in this case the residual account payments did not depend on the employees' relationship with the employers, but rather their union status and years of participation in the Fund. As the IRS points out, however, "[e]mployment (past or current) by a union contractor was the *sine qua non* for Plan participation." Reply Brief of Appellant at 4. Although it was possible for a person to be employed as a sheet metal worker and not be a participant in the Fund (*i.e.,* working for a non-union contractor who was not obligated to contribute), it was not possible to be a member .of the Fund unless the person worked, or had worked, for a participating union contractor. The substance of the transaction, rather than its form, controls our inquiry as to whether the disputed payments were wages. *See, e.g., Spicer Accounting, Inc. v. United States*, 918 F.2d 90, 93 (9th Cir.1990); *Joseph Radtke, S.C. v. United States*, 895 F.2d 1196, 1197 (7th Cir.1990) (per curiam). We, therefore, agree with the IRS that receipt of a residual

balance payment was directly contingent on past or present employment.[4]

In situations analogous to the present case, the three cases cited focused on the trust fund's "eligibility" requirements to determine whether a payment to an employee was remuneration for past or present services. After considering the reasoning of the other circuits, we agree that eligibility requirements provide the most accurate test to determine whether a payment is truly in consideration for services. *Cf.* Rev.Rul. 80–124, 1980–1 C.B. 212. In the instant case, the Contractors' contributions to the Fund represented part of the benefit package agreed to by Local 141. *Compare Educational Fund of Elec. Indus. v. United States,* 426 F.2d 1053, 1056, 1057 (2d Cir. 1970) (holding that tuition payments to union members from an educational trust fund were wages under FICA and FUTA, because "[t]he payments ultimately derived from the employers and represented a portion of the agreed upon remuneration for services performed by the employees"). We believe that where the disputed payments are derived *solely* from employer contributions and are contingent on work requirements or their equivalents, the distributions are wages under FICA and FUTA. We, accordingly, **REVERSE** the judgment of the district court and **DENY** the taxpayer's refund claim.

---

4. The Fund does not contend that these payments were supplemental unemployment benefits which are exempt from FICA and FUTA taxes. *See* Rev.Rul. 75–461, 1975–2 C.B. 394 (explaining that to qualify as a supplementary unemployment benefit the payments must be made on account of involuntary separation or disability and cannot be paid when employee is working).