# OTTE, TRUSTEE IN BANKRUPTCY *v.*
# UNITED STATES ET AL.

No. 73–375.   Argued October 15, 1974—Decided November 19, 1974

BLACKMUN, J., delivered the opinion for a unanimous Court.

*Howard Karasik* argued the cause and filed a brief for petitioner.

*Keith A. Jones* argued the cause for the United States. With him on the brief were *Solicitor General Bork, Assistant Attorney General Crampton,* and *Crombie J. D. Garrett. Samuel J. Warms* argued the cause for respondent city of New York. With him on the brief were *Adrian P. Burke, Raymond Herzog,* and *Cornelius F. Roche.*

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

This bankruptcy case raises issues (a) as to whether priority claims for wages earned by employees prior to an employer's bankruptcy, but unpaid at the inception of the bankruptcy proceeding, are subject to withholding taxes, and, if so, (b) as to whether the taxing entities must file proofs of claim, and (c) as to which priority of payment, if any, the withholding taxes enjoy under

§ 64a of the Bankruptcy Act (the Act), 11 U. S. C. § 104 (a).[1]

## I

On September 15, 1964, Freedomland, Inc., a New York corporation, filed a petition with the United States District Court for the Southern District of New York for an arrangement under Chapter XI of the Act, 11 U. S. C. §§ 701–799. The arrangement failed, and on August 30, 1965, Freedomland was adjudicated a bankrupt. Petitioner, William Otte, was appointed and qualified as the trustee.

During the statutorily prescribed six-month period for the filing of proofs of claim against the estate, see §§ 57 and 63 of the Act, 11 U. S. C. §§ 93 and 103, 413 former employees of Freedomland filed proofs for unpaid wages (each claim in the amount of $600 or less and all the claims aggregating approximately $80,000) that had been earned within three months preceding the filing of the Chapter XI petition. These wage claims concededly were entitled to a second priority of payment under § 64a (2). No proofs for any federal income or Federal Insurance Contributions Act taxes on these wage claims, withholdable under Chapters 24 and 21, respectively, of the Internal Revenue Code of 1954, 26 U. S. C. §§ 3401–3404

---

[1] "§ 104. Debts which have priority.

"(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition . . . ; (2) wages and commissions, not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen . . . ; (4) taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof which are not released by a discharge in bankruptcy . . . ."

and 3101–3126, were filed by the United States, and no proofs for any New York City personal income tax, withholdable under Chapter 46, Titles T and U, of the New York City Administrative Code, were filed by the city.

In November 1969 the trustee filed a motion for an order directing distribution to the 413 priority wage claimants without deduction for any federal, state, or city withholding taxes. He also asked that the referee declare that the trustee was not required to withhold or pay any such tax or to file any report or return relative thereto with the respective taxing authorities. The State of New York, although served, filed no response to the trustee's motion. The United States and the city did respond. The referee issued an order granting the trustee the relief he requested. App. 48a–50a. In a supporting memorandum decision, the referee stated that the withholding and reporting requirements of the federal and city statutes "would impose a further burden on the administration of these estates which is entirely inconsistent with the objective of efficient expeditious economic administration of bankrupt estates," and that "compliance with withholding and reporting requirements . . . is utterly inconsistent with the spirit and the letter of the Bankruptcy Act." *Id.*, at 36a, 37a.

The United States and the city filed petitions with the United States District Court to review the referee's order and decision. After a hearing, the District Court reversed the order and decision insofar as they pertained to federal taxes. It directed the withholding of federal taxes on the priority wage claims, and also concluded that the amounts to be withheld were "taxes which became legally due and owing by the bankrupt," within the language of § 64a (4), and, therefore, were to be paid as tax claims of the *fourth* priority. The court observed that little more than a simple bookkeeping effort would be involved in withholding 25% of the wage distribu-

tions.[2]  It held that proofs of claim were not required because the employees' proofs gave notice to the trustee and other creditors of the total amounts distributable on account of the claims.  The District Court, however, ruled against the city on the ground that the city's personal income tax did not become effective until 1966, and thus no city tax was due and owing by the bankrupt in 1964 when the Chapter XI petition was filed.  *In re Freedomland, Inc.,* 341 F. Supp. 647 (1972).

The trustee, the United States, and the city all appealed.  The United States Court of Appeals for the Second Circuit affirmed in part and reversed in part.  It held that the trustee was obligated to withhold, to report, and to pay over the withholding taxes on the wage claims, and that the taxing entities were not required to file proofs of claim.  It further held, however—and thus to this extent disagreed with the District Court—that both the United States and the city were entitled to be paid as *second* priority claimants under § 64a (2).  *In re Freedomland, Inc.,* 480 F. 2d 184 (1973).

We granted the trustee's petition for certiorari (unopposed by the United States) primarily because the circuits are in disarray as to the priority to be accorded to withholding taxes on prebankruptcy wage claims.[3]  414

---

[2] Under Internal Revenue Service directives, a trustee in bankruptcy, upon paying priority wage claims, has the option of withholding income and FICA taxes either at a combined flat rate of 25% or at the rates prescribed by §§ 3101 and 3402 of the Code, 26 U. S. C. §§ 3101 and 3402.

[3] First priority: *United States* v. *Fogarty,* 164 F. 2d 26, 33 (CA8 1947); *Lines* v. *California Dept. of Employment,* 242 F. 2d 201, 203, reh. den., 246 F. 2d 70 (CA9), cert. denied, 355 U. S. 857 (1957). Second priority: *In re Freedomland, Inc.,* 480 F. 2d 184, 190 (CA2 1973). Fourth priority: *In re Connecticut Motor Lines, Inc.,* 336 F. 2d 96, 102–106, 108 (CA3 1964).

In *In re John Horne Co.,* 220 F. 2d 33, 35 (CA7 1955), a case concerning wages paid prior to bankruptcy, the court stated: "We

U. S. 1156 (1974). No cross-petition was filed by either the United States or the city of New York.

## II

### Withholding, Reports, and Returns

Every Court of Appeals which has faced the issue, including the Second Circuit in the present case, has held, contrary to the ruling of the referee, that the withholding provisions of the Internal Revenue Code, and of state or municipal tax statutes, require that a trustee in bankruptcy withhold income and social security taxes from payments of wage claims, and that he prepare and submit to the wage claimants and to the taxing authorities the reports and returns statutorily required of employers. *United States* v. *Fogarty,* 164 F. 2d 26, 30–33 (CA8 1947); *United States* v. *Curtis,* 178 F. 2d 268, 269 (CA6 1949), cert. denied, 339 U. S. 965 (1950); *Lines* v. *California Dept. of Employment,* 242 F. 2d 201, 202, reh. den., 246 F. 2d 70 (CA9), cert. denied, 355 U. S. 857 (1957); *In re Connecticut Motor Lines, Inc.,* 336 F. 2d 96 (CA3 1964). To the same effect is *In re Daigle,* 111 F. Supp. 109, 111 (Me. 1953).

A. The requirement of withholding. Section 3402 (a) of the Internal Revenue Code, 26 U. S. C. § 3402 (a), requires "[e]very employer making payment of wages" to "deduct and withhold upon such wages . . . a tax determined . . . ." Section 3401 (a) defines "wages" for withholding purposes to mean, with certain exceptions, "all remuneration . . . for services performed by an employee for his employer," and § 3401 (d) defines "employer" as

are not impressed with the reasoning of the court in the Fogarty case." See also Note, 56 Mich. L. Rev. 631 (1958); Comment, Bankruptcy—Priorities—Fourth Priority Assigned Payroll Taxes on Second Priority Wages, 40 N. Y. U. L. Rev. 360 (1965); Note, 19 Rutgers L. Rev. 546 (1965).

"the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person." The latter section makes an exception where "the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services"; in that case, "employer" means "the person having control of the payment of such wages." Sections T46–51.0 (a) and U46–8.0 of the New York City Administrative Code are generally to the same effect.[4]

The trustee contends that the payment of wage claims under the Bankruptcy Act, although for "wages" within the meaning of that Act, is not the "payment of wages" under § 3402 (a), and that, in any event, the trustee is not the wage claimant's "employer" to whom § 3402 (a) relates.

The payments to the wage claimants who filed in this case are payments for services performed by them for their former employer, Freedomland, before the commencement of the proceeding under the Act. There is, and can be, no dispute as to this. The fact that the services were performed for the bankrupt, rather than for the trustee, and the fact that payment is made after the employment relationship terminated, do not convert the remuneration into something other than "wages," as defined by § 3401 (a) of the Internal Revenue Code. That statute, as has been noted, broadly defines "wages" to include, with stated exceptions not material here, "all remuneration." And § 3401 (d), in defining "employer," twice refers to services that the employee "performs or performed." It thus speaks in the past tense as well as

---

[4] The terms "wages" and "employer," as they appear in Titles T and U of the City Code are given the same meanings they have in the Internal Revenue Code. New York City Administrative Code §§ T46–1.0 (c) and U46–1.0 (b), (e), and (l) (1971).

the present and thereby plainly reveals that a continuing employment relationship is not a prerequisite for a payment's qualification as "wages." The income tax withholding regulations since 1943 have so provided in specific terms. 26 CFR § 31.3401 (a)–1 (a)(5); Treas. Reg. 120 § 406.205 (b) (1954); Treas. Reg. 116 § 405.105 (1944 and 1951 eds.); Treas. Reg. 115 § 404.101 (a) (1943). The regulations are not in conflict with the statute; they further the statutory purpose and are reasonable; and they are a valid exercise of the rulemaking power. *Cammarano* v. *United States,* 358 U. S. 498, 507–512 (1959).[5]

The payment of the wage claims is thus "payment of wages" under § 3402 (a) of the Internal Revenue Code.

The fact that in bankruptcy payment of wage claims is effected by one other than the bankrupt former employer does not defeat any withholding requirement. Although § 3402 (a) refers to the "employer making payment of wages," § 3401 (d)(1), as also has been noted, provides that if the person for whom the services were performed "does not have control of the payment of the wages for such services," the term "employer" then means "the person having control of the payment of such wages." This obviously was intended to place responsibility for withholding at the point of control. The petitioner trustee suggests that control rests in the referee rather than in the trustee, because of the former's duty, under § 39a (5) of the Act, 11 U. S. C. § 67

---

[5] We see nothing to the contrary in *United States* v. *Embassy Restaurant, Inc.,* 359 U. S. 29 (1959), which is pressed upon us by the trustee. The issue there was whether contributions by an employer to a union welfare fund, as required under a collective-bargaining agreement, were entitled to second priority as "wages . . . due to workmen." There is no such issue here, for the trustee acknowledges, as he must, that the present claims are, indeed, for "wages," within the meaning of the Bankruptcy Act.

(a)(5), to "declare dividends." We need not determine whether it is the trustee, with his responsibility, under §§ 47a (8) and (11) of the Act, 11 U. S. C. §§ 75 (a)(8) and (11), for making recommendations and actual payments, or the referee, with his supervision over the general administration of the bankrupt estate, or the estate itself, that has "control of the payment of such wages," within the meaning of § 3401 (d)(1) of the Internal Revenue Code. One of them is the "employer" and, as such, has the duty to withhold or to order the withholding, as the case may be.[6] An "employer," under § 3402 (a), is thus present.

The situation is the same with respect to FICA withholding. Section 3102 (a) of the Internal Revenue Code, 26 U. S. C. § 3102 (a), provides that the tax is to be collected by the employer by deducting "from the wages as and when paid." Here, too, the payments clearly are "wages" under that statute, even though again, at the time of payment, the employment relationship between the bankrupt and the claimant no longer exists. And here, also, the regulations long and consistently have been to this effect. 26 CFR § 31.3121 (a)–1 (i); Treas. Reg. 128 § 408.226 (a) (1951); Treas. Reg. 106 § 402.-227 (a) (1940). The fact that the FICA withholding provisions of the Code do not define "employer" is of no significance, for that term is not to be given a narrower construction for FICA withholding than for income tax withholding.

Because of the identity of definition already observed, n. 4, *supra*, the same rationale necessarily applies to the New York City withholding tax.

---

[6] "The result would be no different if it is argued that the bankruptcy court rather than its trustee is 'the person having control of the payment of such wages.' There is no provision excepting a court from the requirement of withholding on amounts paid an employee." *United States* v. *Fogarty*, 164 F. 2d, at 32.

The trustee finally suggests that the placing of a withholding obligation upon the trustee amounts to the imposition of a penalty barred by § 57j of the Act, 11 U. S. C. § 93 (j). This argument, however, rests upon the presence of § 6672 of the Internal Revenue Code, 26 U. S. C. § 6672, and §§ T46–65.0 (g) and U46–35.0 (g) of the New York City Administrative Code, all of which impose a penalty, apart from the tax, on a person who willfully fails to fulfill his obligation to withhold or who willfully attempts to evade or defeat any tax. That, obviously, is not this case.

B. The requirement of reports and returns. This routinely follows from the obligation to withhold. Section 6051 (a) of the Internal Revenue Code, 26 U. S. C. § 6051 (a), provides that a person required to withhold must furnish the employee a written statement showing the wages subject to withholding and the amount withheld on account of each tax. A duplicate of that statement is to be available for filing with the Internal Revenue Service. § 6051 (d). Sections 6001 and 6011 require every person responsible for payment or collection of taxes to keep such records and make such returns as the Secretary prescribes. The applicable regulations respond to these statutes. 26 CFR §§ 31.6001–1, 31.6001–2, 31.6001–5, 31.6011 (a)–6 (a)(1), and 31.6051–1; Rev. Proc. 71–18, 1971–1 Cum. Bull. 684. It is undisputed that the petitioner trustee must comply with these provisions if he is subject to the withholding requirements of §§ 3402 and 3102. *Nicholas* v. *United States,* 384 U. S. 678, 693 (1966).

The New York City Administrative Code provisions are to similar effect, §§ T46–52.0 and T46–54.0, U46–9.0 and U46–11.0, and we reach the same conclusions with respect to reports and returns thereunder.

C. Expense and delay. The trustee argues, as the referee held, that the imposition of obligations to withhold,

report, and file returns places a burden on the administration of bankrupt estates that is at odds with economic and expeditious administration and with the spirit of the Act. He places some reliance, as did the referee, on the paper by Referee Hiller, The Folly of the Fogarty Case, 32 Ref. J. 54 (1958), where the author states that "the application of the Fogarty rule is sheer nonsense" and that the case is "out of harmony with sound bankruptcy law." *Id.*, at 54, 56.

There is, of course, an overriding concern in the Act with keeping fees and administrative expenses at a minimum so as to preserve as much of the estate as possible for the creditors. 3A W. Collier, Bankruptcy ¶¶ 62.05 [1], 62.02 [5] (14th ed. 1972). And it cannot be denied that paperwork takes time and occasions expense. In this particular case, withholding must be computed on the 413 wage claims; returns (Forms W–2, W–3, and 941) must be prepared and furnished the claimant and the Internal Revenue Service; records must be maintained; and the taxes withheld must be remitted to the respective taxing entities.

We are not persuaded, however, that this burden would be so undue as to be inconsistent with or violative of the spirit of the Act. It is the same burden, no more and no less, that any employer of the same size must bear, and it is the same burden that is borne by any receiver or arrangement debtor or any other fiduciary with a like number of employees. The burden is not disproportionate.[7] Further, the Internal Revenue Service has endeavored to lighten the load by its alternative 25% combined bank-

---

[7] The District Court, on review of the referee's order and decision, received evidence with respect to costs of compliance. It concluded that compliance "adds only slightly to the trustee's inescapable task and cost of verifying each claim before payment." 341 F. Supp. 647, 654 (SDNY 1972).

ruptcy withholding rate for income and FICA taxes. See n. 2, *supra*. New York City has done the same with its 1% withholding rate. Neither should the burden make it necessary, as is so often and so easily suggested, to employ an accountant. Computations at the rates of 25% and 1%, respectively, are simple and elementary arithmetic exercises, hardly worthy of an accountant's talent; a high school student is able to make those computations as is any bookkeeper, clerk, or the trustee himself. The added tasks of withholding, reporting, returning, and remitting are contemplated, in our view, by the Act. The interests of the taxing entities, who are creditors, too, and, through them, the interests of the public, outweigh the minuscule added burden for the estate. See *Swarts* v. *Hammer*, 194 U. S. 441, 444 (1904). If relief is to be considered for bankrupt estates in this respect, it is a matter for legislative, not judicial, concern. There is nothing in the Act or in the Internal Revenue Code that relieves the trustee of these duties. Cf. §§ 7507, 108 (b), 371, and 372 of the Internal Revenue Code, 26 U. S. C. §§ 7507, 108 (b), 371, and 372.

## III

### Proofs of Claim

The trustee asserts that because the United States and the city failed to file proofs of claim for the taxes at issue, payment thereof is barred. It is said that these taxing entities were on notice, by reason of Freedomland's bankruptcy schedules, that the bankrupt owed the priority wage claims; that these claims were to be filed within six months; that the entities could obtain an extension of time, under § 57n of the Act, 11 U. S. C. § 93 (n), in which to compute and file their claims; and that they chose to ignore the referee's bar order directed, among others, to "taxing authorities and agencies," App. 24a.

This argument, in our view, misconceives the nature of the taxes that are to be withheld. Liability for the taxes accrues only when the wage is paid. Sections 3402 (a) and 3101 (a) of the 1954 Code; New York City Administrative Code §§ T46–51.0 (a) and U46–8.0. The wages that are the subject of the wage claims, although earned before bankruptcy, were not paid prior to bankruptcy. Freedomland had incurred no liability for the taxes. Liability came into being only during bankruptcy. The taxes do not partake, therefore, of the nature of debts of the bankrupt for which proofs of claim must be filed.

Furthermore, the filing of proofs by the United States and New York City obviously would serve no purpose here. Proofs apprise the trustee and other creditors of the existence of claims against the estate. The priority wage claims themselves, however, cover the gross wages earned and unpaid. These include any tax that is to be withheld. The tax is not an added increment.

We conclude, therefore, that proofs of claim on the part of the United States and of New York City with respect to withholding taxes on priority wage claims are not required.

## IV

With withholding taxes thus determined as properly applicable to priority wage claims, their placement in the payment scale under § 64a must be determined.[8] The choice lies between the first priority (costs and ex-

---

[8] The trustee has paid the priority wage claims, with the taxes withheld and set aside. This was done, however, pursuant to an agreement that the rights of the parties would not be affected thereby. The United States, therefore, is not in a position to claim that a trust fund has been established under § 7501 (a) of the Internal Revenue Code, 26 U. S. C. § 7501 (a). See *United States* v. *Randall,* 401 U. S. 513 (1971); *Nicholas* v. *United States,* 384 U. S. 678, 690–691 (1966).

penses of administration), urged by the United States; the second priority (wages and commissions, limited as the statute specifies), urged by the city of New York; the fourth priority ("taxes which became legally due and owing by the bankrupt"), urged by none of the parties here; and no priority at all.   The third and fifth priorities clearly have no possible application to these taxes.

We readily reject the fourth priority.   The withholding taxes are not taxes which became due and owing by the bankrupt.   As has been noted above, the taxes did not become due and owing at all until the claims, constituting wages, were paid.   This took place after bankruptcy, not before.   The situation, thus, differs from that where the bankrupt paid wages prior to bankruptcy, but the taxes withheld were not remitted to the taxing entities by the time of the inception of the bankruptcy proceeding.   The latter would be taxes "which became legally due and owing by the bankrupt."   See *In re John Horne Co.*, 220 F. 2d 33 (CA7 1955); *Pomper* v. *United States*, 196 F. 2d 211 (CA2 1952).

We similarly reject the first priority, although we recognize that this appears to be the favorite conclusion reached by those courts that have passed upon the issue. See n. 3, *supra*.   The leading case for this approach is *United States* v. *Fogarty, supra*.   The Court there, however, without a statement of underlying reasons, merely concluded that the taxes "should be allowed and classified as an expense of administration," 164 F. 2d, at 33. In *Lines* v. *California Dept. of Employment, supra,* the court followed *Fogarty* and held that, because the tax accrued "subsequent to the filing of the petition in bankruptcy, such tax had the character of an expense of administration."   246 F. 2d, at 71.

We think that more than a general observation that the taxes arose during bankruptcy is required to dignify

withholding taxes with the prime status of first priority. We grant that the very language of § 64a (1) ("including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition") necessarily indicates that first priority items include some in addition to those that preserve or develop the bankrupt estate. Withholding taxes, however, do not strike us as costs or expenses of doing business. They are attributable in their entirety to the availability of funds for the payment of priority wage claims. They accrue only as those claims are paid and, to the extent of that payment, the payment of the taxes should be assured. In addition, it is anomalous to accord withholding taxes a higher priority than the wage claims to which they so directly relate. They can be computed only upon the amount of funds available for payment of the wage claims and should not have a computational base greater than those payments. The withholding taxes are, in full effect, part of the claims themselves and derive from and are carved out of the payment of those claims. We therefore fully agree with the Second Circuit's observation, 480 F. 2d, at 190: "Conceptually the tax payments should be treated in the same way as the wages from which they derive and of which they are a part."

We see nothing in *United States* v. *Randall,* 401 U. S. 513 (1971), with its observation, *id.,* at 515, that the Bankruptcy Act "is an overriding statement of federal policy on this question of priorities," that is contrary to the result we reach here. That case concerned § 7501 (a) of the Internal Revenue Code, 26 U. S. C. § 7501 (a), with its provision for a trust fund for withheld taxes, and the impact of that statute, when not complied with, upon payment of first priority costs and expenses of administration. *Randall* is not a holding, as the trustee would claim, Brief for Petitioner 18–19, that the withholding

taxes do not have the same priority as the wage claims themselves.

We therefore conclude that these federal and city withholding taxes are entitled, as are the priority wage claims from which they emerge, to second priority of payment under § 64a (2) of the Act, 11 U. S. C. § 104 (a).[9]

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

---

[9] This conclusion makes it unnecessary for us to consider whether, if the Government were to prevail in its first-priority argument, the judgment of the Court of Appeals here could be modified in the absence of a cross-petition by the United States. We are advised that the bankrupt estate's assets are sufficient to pay all first- and second-priority claims in full. Tr. of Oral Arg. 28–29. Whether the withholding taxes have first- rather than second-priority status is, therefore, of no practical consequence to the Government in the present case.