### In re AUTISTIC CHILDREN OF TENNESSEE, a/k/a Walden House, Debtor.

### Bankruptcy No. 79–31075.

United States Bankruptcy Court, M.D. Tennessee.

June 4, 1985.

B. Gail Reese, Cosner & Waldschmidt, Nashville, Tenn., for trustee.

Peggy F. Williams, Jeffrey Wilson, Nashville, Tenn., for the Com'r of the Tennessee Dept. of Employment Sec.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on the Chapter 7 trustee's objection to a portion of the claim filed by Tennessee Department of Employment Security, hereinafter referred to as "Creditor") in the amount of $48,-745.68. The trustee contends that the creditor is only entitled to a priority claim for prepetition unemployment compensation payments in the amount of $10,991.78. The creditor argues that its entire claim should be characterized as an administrative expense and accorded priority pursuant to § 64(a)(1) of the Bankruptcy Act, 11 U.S.C. § 104(a)(1) (West Supp.1979)[1]. In consideration of stipulations of fact, briefs of the parties and the entire record, the court hereby concludes that the creditor is entitled to a priority claim in the amount of $10,991.78 with the remainder of its claim allowable as a general unsecured claim.

The following shall represent findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

On June 25, 1979, Autistic Children of Tennessee, Inc., a/k/a Walden House (hereinafter referred to as "Bankrupt"), filed a consumer liquidation petition under the Bankruptcy Act. The creditor in this proceeding filed a proof of claim on August 10, 1979, for the amount of $10,991.78 due in unemployment compensation reimburse-ments for the fourth quarter of 1978 and the first two quarters of 1979. On June 16, 1980, the creditor filed an amended proof of claim for the amount of $42,692.59 for amounts which had become due in postpetition unemployment compensation reimbursements. Finally, on March 11, 1981, the creditor filed additional amended claims with all claims totaling $48,745.68.

The amounts sought by the creditor represent unemployment compensation benefits paid by the creditor to former employees of the bankrupt. The unemployment benefits were paid out of an unemployment compensation administration fund to qualified former employees of the bankrupt. Normally, employers are required to contribute to the fund an amount equal to a certain percentage of wages paid by the employer during each calendar year. Since the bankrupt operated as a non-profit organization pursuant to the Internal Revenue Code, it was able to qualify as a "reimbursable employer." Tenn.Code Ann. § 50-1328(8) (West 1977). As a reimbursable employer, the bankrupt was not obligated to make payments to the creditor unless a former employee was awarded unemployment compensation benefits. *See* Tenn. Code Ann. § 50-1328(8)(b) (1977).

Since the bankrupt had ceased doing business when it filed, all its employees had been terminated. The creditor filed a priority claim for $10,991.78 of prepetition unemployment contribution taxes as well as $37,753.90 in postpetition unemployment taxes.

Both the trustee and the creditor agree that the prepetition tax claim is allowable as a priority claim and that the postpetition tax claims are not allowable as a priority claim pursuant to 11 U.S.C. § 104(a)(4) (West Supp.1979).[2] The issue before the

---

1. The case giving rise to this proceeding was commenced prior to October 1, 1979, the effective date of the Bankruptcy Code, 11 U.S.C.A. § 101, *et seq.* (West 1979). Accordingly, the Bankruptcy Act of 1898 governs the issues in this proceeding. Act of November 6, 1978, PUB.L. 95–598 § 403(a), 92 Stat. 2683.

2. 11 U.S.C. § 104(a)(4) (West Supp.1979) provides in relevant part:

"(a) The debts to have priority, in advance of the payments of dividends to creditors, and to be paid in full out of bankrupt estates and the order of payment, shall be ...

(4) taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof which are not released by a discharge in bankruptcy: *provided, however,* That no priority over general unsecured claims shall pertain to taxes

court is whether the creditors' claim for postpetition unemployment compensation taxes may be accorded a first priority as an administrative expense pursuant to 11 U.S.C. § 104(a)(1) (West Supp.1979).[3]

The creditor maintains that it, acting as an agent for the bankrupt, merely performed a postpetition service which is compensable as an administrative expense. The trustee asserts that no authority exists for treating these postpetition claims any differently than a general unsecured claim.

In the leading Supreme court case of *Otte v. United States*, 419 U.S. 43, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974), the court addressed the issue of whether withholding taxes derived from wages paid by a bankrupt postpetition were entitled to a priority status under 11 U.S.C. § 104(a)(1)(2) and (4) (West Supp.1979). The court found that withholding taxes were not "... costs or expenses of doing business" and accordingly could not be granted a first priority status.[4] Likewise, in *Melamed v. Internal Revenue Service (In re Laub Baking Company)*, 642 F.2d 196 (6th Cir.1981), held that an employer's federal unemployment taxes based on postpetition wages "... did not arise as an actual and necessary cost of administration of the bankrupt's estate and therefore were not entitled to first priority." *Laub Baking Company* at 199.[5]

The taxes sought by the creditor in this proceeding, are analogous to the taxes sought by the IRS in the *Laub Baking Company* case. The only difference between the taxes in these two cases is the calculation of the employer's liability. In the *Laub Baking Company* case, the employer was liable for unemployment taxes based on the amount of postpetition wages paid. In this case, the employer was liable only when former employees sought unemployment compensation from the creditor. Inasmuch as the court finds that the method of calculating the employer's liability does not for purposes of this case affect the nature of the tax, it must follow the Supreme Court and the Sixth Circuit in holding that unemployment compensation taxes are not actual and necessary costs of administration and cannot be accorded a first priority under the Bankruptcy Act.

The creditor has urged this court to award it a first priority position based on the Ninth Circuit case of *Wyle v. Pacific Maritime Association (In re Pacific Far East Line, Inc.)*, 713 F.2d 476 (9th Cir. 1983). In the *Wyle* case, the Ninth Circuit held that an employer's payments to a maritime union employee benefit plan were actual and necessary expenses of administration "... since the payments promoted continued performance under a labor agreement." *Wyle* at 480. Unlike the situation in *Wyle*, the payment sought by the credi-

not included in the foregoing priority: *And provided further,* That no order shall be made for the payment of a tax assessed against any property of the bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court; ...."

Both the trustee and the creditor, in this proceeding, agree that a fourth priority under § 104(a) of the Bankruptcy Act can only be accorded to a tax legally due and owing at the time the bankruptcy petition was filed. In this case, the parties agree that the postpetition priority claim were for taxes which were not legally due and owing at the time of the filing of the bankruptcy petition.

**3.** 11 U.S.C. § 104(a)(1) (West Supp.1979) provides in relevant part:

"(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs

and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; ...."

**4.** In *Otte,* the court did, however, find that withholding taxes should be granted a second priority status. The court found it anomalous to accord second priority status to wages paid postpetition without granting the same priority to taxes "carved out" of those wages. *Otte* at 51, 95 S.Ct. at 253.

**5.** The Sixth Circuit further held that an employer's federal unemployment taxes were not entitled to any priority under the Act but must be treated as general unsecured claims. Since the taxes were not "carved out" of postpetition wages but were merely based on the amount of postpetition wages paid, the court held that the IRS could not boot strap the taxes into the same priority category as postpetition wages.

tor in this matter did not promote continued performance of any sort. The creditor was obligated to make the payments to former employees of the bankrupt and is presently seeking compensation for those payments. The court cannot equate the creditor's claim with the claim asserted by the maritime union in the *Wyle* case.

The court, therefore, holds that the creditor's claim for postpetition unemployment taxes is not entitled to a first priority under 11 U.S.C. § 104(a)(1) (West Supp.1979). Accordingly, the court hereby ORDERS, ADJUDGES and DECREES that the creditor is entitled to a priority claim for prepetition taxes in the amount of $10,991.78 with the remainder of its claim to be treated as a general unsecured claim.

IT IS, THEREFORE, SO ORDERED.