In the Matter of Richard A. PIERCE, Debtor.

STATE OF TEXAS and the Texas State Employment Commission, Appellants,

v.

Richard A. PIERCE, Appellee.

No. 90–1923.

United States Court of Appeals, Fifth Circuit.

July 16, 1991.

John Mark Stern, Mark Browning, Asst. Attys. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for appellants.

Sean F. Creegan, Deputy Chief Counsel for Employment Sec., Dept. of Labor & Indus., Harrisburg, Pa., for amici curiae Com. of Pa., et al.

Joe Scott, Sr. Asst. Atty. Gen., Casper, Wyo., for amicus curiae Wyoming Dept. of Employment.

Gary Allen, Chief, Gary D. Gray, Kenneth W. Rosenberg, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for amicus curiae U.S.

W. Hollis Webb, Jr., Kevin L. Williams, Baker, Clifford, Krier & Webb, Lubbock, Tex., for appellee.

Before THORNBERRY, JONES, and WIENER, Circuit Judges.

THORNBERRY, Circuit Judge:

The bankruptcy court concluded that unemployment taxes which the debtor owed to the Texas Employment Commission (TEC) were not entitled to priority under section 507(a)(7)(D) of the Bankruptcy Code because the debtor paid the wages on which the taxes were based more than ninety days before filing for bankruptcy. The TEC appealed that decision to the district court, arguing that unemployment taxes are not dischargeable if the return was due within three years of the date when the employer filed for bankruptcy. The district court affirmed the bankruptcy court's decision, 115 B.R. 523, however, and the TEC now appeals to this court.

We conclude that the bankruptcy court's interpretation of the Code is palpably incorrect. Therefore, the order discharging the debtor's liability for unemployment taxes is REVERSED and judgment is RENDERED in favor of the TEC for $5,319.48, the amount of unemployment taxes owed.

## FACTS AND PROCEDURAL HISTORY

The facts are not disputed. *See* Stipulations of Fact, *reprinted in* Record on Appeal (R.), vol. 2. The debtor, Richard A. Pierce, operated a business known as Regal Building Systems. On September 13, 1988, he filed for relief under Chapter 7 of the Bankruptcy Code. When Pierce filed his petition for bankruptcy, he owed unemployment taxes of $5,319.48. *See* Tex.Rev. Civ.Stat.Ann. art. 5221b–5 (Vernon 1987 & Supp.1991). The taxes were assessed on wages that he had paid to his employees more than ninety days before he filed for bankruptcy and more than ninety days before he closed his business. The returns for these taxes were all due within three years of the date on which he filed for bankruptcy. Neither the state of Texas nor the TEC filed a proof of claim for the amount that Pierce owed, *see* 11 U.S.C.A. §§ 501, 502(a), 727(c)(1) (West 1979 & Supp. 1991).

Pierce was granted his Chapter 7 discharge on February 13, 1989. On February 16, he filed a complaint in the bankruptcy court against the state of Texas and the TEC seeking a determination that his liability for the unemployment taxes had been discharged. The TEC answered, claiming that the taxes which Pierce owed were exempt from discharge under sections 507(a)(7)(D) and 523(a)(1)(A) of the Bankruptcy Code because the returns for the taxes were due within three years of the date that Pierce petitioned for bankruptcy. *See* 11 U.S.C.A. § 726(a)(1) (West 1979). In April 1990, Pierce moved for summary judgment. The bankruptcy court conceded that the legislative history of the Bankruptcy Reform Act of 1978 indicated that the unemployment taxes were not dischargeable but concluded that "the plain reading of the statute [did] not yield this result." *See Pierce v. Texas*, 115 B.R. 523, 526 (Bankr. N.D.Tex.1990). Consequently, the bankruptcy court granted Pierce's discharge. The district court summarily affirmed. *See* Order, *reprinted in* R., vol. 1, at 93.

The bankruptcy court's interpretation of the Bankruptcy Code significantly curtails the power of states and the federal government to collect employment taxes from bankrupt employers. The decision also affects the ability of the federal government to collect the employer's share of social security taxes. For this reason, Wyoming, Pennsylvania, and the federal government have filed briefs in support of the TEC.

## DISCUSSION

■ Both the bankruptcy court and the district court concluded that unemployment taxes which become due more than ninety days prior to the filing of a bankruptcy petition or cessation of a debtor's business are not entitled to priority under section 507(a)(7)(D) of the Bankruptcy Code and, therefore, are not exempt from discharge under section 523(a)(1)(A). We review their interpretation of the Code de novo. *See In re Kolstad*, 928 F.2d 171, 173 (5th Cir. 1991).

■ A debt that has "priority" is paid from the bankruptcy estate before the debts to general unsecured creditors are paid. *See* 3 L. King, *Collier on Bankruptcy* ¶ 507.02[1], at 507–9 (15th ed. 1991). In section 507 of the Code, Congress listed all priorities in bankruptcy in the order in which they are to be paid. *See id.* ¶ 507.02[2], at 507–11. Unemployment taxes, the focus of this case, have seventh priority, along with other "unsecured claims of governmental units." *See* 11 U.S.C.A. § 507(a)(7) (West Supp.1991). But the claims of governmental units listed in section 507(a)(7) have an advantage over most other priorities: they are non-dischargeable even if the governmental entity did not file a proof of claim. *See* 11 U.S. C.A. § 523(a)(1)(A) (West Supp.1991).[1]

Pierce's argument is based on the relationship between two priorities: that given to claims for unpaid wages in section 507(a)(3)(A) and that given to employment

---

1. Section 523(a) provides that a discharge under section 727 does not discharge an individual debtor from any debt:

　　(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed.

taxes in section 507(a)(7)(D). Under section 507(a),

> [t]he following expenses and claims have priority in the following order:
>
> ....
>
> (3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay—
>
> > (A) *earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business*, whichever occurs first; but only
> >
> > (B) to the extent of $2,000 for each such individual.
>
> ....
>
> (7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
>
> ....
>
> > (D) an employment tax on a wage, salary, or commission *of a kind specified in paragraph (3) of this subsection* earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, *after three years before the date of the filing of the petition.*

(emphasis added).

Pierce asserts his right to a discharge using the following deductive reasoning. Under section 507(a)(7)(D), an employment tax has priority if it is "on a wage, salary or commission of the kind specified in [507(a)(3) ]." The "kind" of wages specified in section 507(a)(3)(A) are those "earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first." The wages on which he owes taxes were earned more than ninety days before he filed for bankruptcy and more than ninety days before he closed his business. Consequently, the TEC's claim is not entitled to priority, which means that its claim for unemployment taxes is not exempt from discharge under section 523(a)(1)(A). Thus, Pierce's conclusion hinges on the premise that sec-

tion 507(a)(7)(D)'s reference to section 507(a)(3) imposes a temporal restraint on the priority of employment taxes.

The TEC proffers another explanation for the reference to 507(a)(3) in section 507(a)(7)(D). Section 507(a)(7)(D) refers to "an employment tax on a wage, salary or commission *of the kind* specified in [507(a)(3) ]"; section 507(a)(3) refers to "claims for wages, salaries, or commission, *including vacation, severance, and sick leave pay.*" According to the TEC, the reference back to section 507(a)(3) was intended to incorporate the *kinds* of wages included in that section, not the *periods* for which those wages were classified as a priority.

Although the TEC offers no authority to support its conclusion, the language of section 507(a)(7)(D) itself rebuts Pierce's interpretation. That section speaks of wages "of the kind specified in [507(a)(3) ] earned from the debtor before the date of the filing of the petition." If we insert the language of 507(a)(3), as Pierce would have us do, 507(a)(7)(D) provides that taxes have priority only if they are on wages

> earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, earned from the debtor before the date of the filing of the petition.

This combination of the two sections produces either redundancy or opposition. Moreover, section 507(a)(7)(D) already limits the period for priority to "three years before the date of the filing of the petition." If we accept Pierce's analysis, this restriction would apply only if a debtor closed his business more than three years ago and still owed unemployment taxes on wages paid within ninety days before he closed.

The wording of section 523 of the Code also refutes Pierce's exegesis. In section 523(a)(1)(A), Congress excepted from discharge taxes "of the kind *and for the periods* specified in section 507(a)(2) or 507(a)(7) of [title 11]" (emphasis added). Congress would have used similar language in 507(a)(7)(D) had it intended for the

allusion to 507(a)(3) to include a temporal restriction.

Ironically, Pierce contends that his interpretation of the statute is so clear that this court should not look to the legislative history of this provision for enlightenment. *See Toibb v. Radloff,* —— U.S. ——, ——, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991) (holding that courts should look to the language of the Bankruptcy Code first and should refer to the statute's legislative history only if the language is ambiguous). He makes this assertion because the legislative history of section 507 convincingly supports the TEC's position that Congress intended for unemployment taxes to be non-dischargeable if the taxes were due within three years of the date of the debtor's bankruptcy.

Section 64a(4) of the Bankruptcy Act of 1898 gave a fourth priority to taxes owed to the United States or to any state or its subdivisions. *See* 3 L. King, *Collier on Bankruptcy* ¶ 507.01, at 507–8 (15th ed. 1991). The Act placed no restriction on the period for which those taxes would continue to have priority. *See id.* In 1966, Congress amended section 17a(1) of the Act to limit non-dischargeability to those taxes that became due within three years before the petition for bankruptcy. *See* Act of July 5, 1966, Pub.L. No. 89–496, 1966 U.S. Code Cong. & Admin.News (80 Stat. 270) 306–07. This amendment was based on a policy determination that the three year period "adequately safeguard[ed] the public's interest in the collection of revenues while at the same time limit[ed] the impact of long accumulated, unsecured tax claims on general creditors." *See* S.Rep. No. 1158, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 2468, 2471.

When Congress rewrote the Bankruptcy Act in 1978, it gave ample indication that it did not intend to reduce the three year priority period of section 17a(1) to ninety days. In its initial bill, the House proposed a sixth priority for employment taxes but reduced the priority period from three years to two years. *See* H.R.Rep. No. 595, 95th Cong, 1st Sess. 190, 1978 U.S.Code Cong. & Admin.News 5787 (referring to H.R. 8200, 95th Cong., 1st Sess. § 507(6)(D) (1977)). The Senate also made employment taxes a sixth priority, but it retained the three year period of section 17a(1). *See* S. 2266, 95th Cong., 2d Sess. § 507(a)(6)(A) (1978); S.Rep. No. 989, 95th Cong., 2d Sess. 70 (1978), 1978 U.S.Code Cong. & Admin. News 5787. Neither bill contained a reference to the provision granting priority to unpaid wages, which has generated this litigation. In the 1978 Bankruptcy Code, Congress adopted the Senate proposal,[2] as the statement by Representative Don Edwards indicates:

> The employer's share of the employment taxes on wages earned and paid before the bankruptcy petition will receive sixth priority to the extent the return for these taxes was last due (including extensions of time) within 3 years before the filing of the petition, or was due after the petition was filed). [sic:) ]

124 Cong.Rec. H11113 (daily ed. Sept. 28, 1978). Representative Edwards's interpretation was reiterated by Senator Dennis DeConcini. *See* 124 Cong.Rec. S17429 (daily ed. Oct. 6, 1978). Because Congress did not hold a conference on the House and Senate bills, the statements by these two floor managers is "persuasive evidence of congressional intent." *See Begier v. Internal Revenue Serv.,* —— U.S. ——, 110 S.Ct. 2258, 2266 n. 5, 110 L.Ed.2d 46 (1990).

Pierce admits that some statements made by Representative Edwards and Senator DeConcini support the TEC's position, *see* Appellee's Brief at 7, but he contends that other statements by these two men support his position. Both floor managers indicated that if a bankrupt employer owed wages to an employee, the government's claims for taxes on those unpaid wages was not to have a higher priority than the employee's claim for the wages themselves. *See* 124 Cong.Rec. H11113 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards); 124 Cong.Rec. S17429 (daily ed. Oct. 6, 1978)

---

**2.** The 1984 amendments to the Bankruptcy Act relegated unsecured claims of governmental units from sixth to seventh priority. *See* 11 U.S.C.A. § 507 note (West Supp.1991).

(statement of Sen. DeConcini). An employee has a general unsecured claim for unpaid wages earned more than ninety days before bankruptcy or more than ninety days before the employer closed the business; i.e., such a claim has no priority. *See* 11 U.S.C.A. § 507(a)(3)(A) (West 1979 & Supp.1991). Thus, Pierce reasons, a tax on unpaid wages should not receive priority unless the tax is on wages earned within ninety days of the date that the debtor petitioned for bankruptcy or closed his business.

The flaw in Pierce's analysis is that the unemployment tax which the TEC is seeking to recover is not a tax on unpaid wages. *See* Tex.Rev.Civ.Stat.Ann. art. 5221b–5(a) (Vernon 1987). *See also Otte v. United States*, 419 U.S. 43, 55, 95 S.Ct. 247, 255, 42 L.Ed.2d 212 (1974) (recognizing the distinction between a tax on paid and unpaid wages). An unemployment tax will never have a higher priority than the wages on which it is based "since the tax is computed only on wages paid, not merely earned, and computation as a seventh priority will be impossible until the general wages are paid." *See* 3 L. King, *Collier on Bankruptcy* § 507.04[7][e], at 507–40 (15th ed. 1991). Consequently, the only piece of legislative history that Pierce cites to support his analysis is irrelevant.

Like Pierce, we can find no support in the legislative history that Congress intended to prevent the states from recovering unemployment taxes if a debtor paid the wages more than ninety days before filing for bankruptcy or more than ninety days before closing his business. On the contrary, the legislative history clearly indicates that Congress intended to retain a three year priority for such taxes. Consequently, the orders of the bankruptcy court and the district court, which granted the debtor a discharge, are REVERSED, and judgment is RENDERED in favor of the TEC for $5,319.48, the amount of unemployment taxes the debtor owes.

We are required to include an instruction regarding interest in our mandate. *See* Fed.R.App.P. 37. Texas law permits the state to recover interest and penalties on accumulated unpaid unemployment taxes. *See* Tex.Rev.Civ.Stat.Ann. art. 5221b–12 (Vernon Supp.1991). However, the TEC made no request for pre-petition or post-petition interest either to this court or to the bankruptcy court, and we are reluctant to determine, *sua sponte*, whether a governmental entity may recover interest against a debtor who has received a discharge. *See In re Hanna*, 872 F.2d 829, 830–31 (8th Cir.1989). Therefore, we award the TEC neither pre-petition nor post-petition interest.