961 F.2d 1577
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John J. GUY, Trustee of the Terex Reorganization Trust,
Plaintiff-Appellant,
v.
TEREX CORPORATION, United States of America, Defendants-Appellees.
 No. 91-3687.
 United States Court of Appeals, Sixth Circuit.
 April 30, 1992.
 
 Before RYAN and SUHRHEINRICH, Circuit Judges; and CHURCHILL, Senior District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff, John J. Guy, Trustee of the Terex Reorganization Trust, appeals from the order of the district court affirming the bankruptcy court's order granting summary judgment to the defendant, Terex Corporation. The parties do not dispute the facts but the trustee raises three questions on appeal:
 
 
 2
 1) Whether the district court erred in finding that the FICA and FUTA employment taxes paid by the trustee were not taxes "incurred" by the bankruptcy estate and therefore were not "administrative expenses," which Terex Corporation agreed to pay as part of the reorganization plan;
 
 
 3
 2) Whether the district court erred in finding that the trustee was not Terex Corporation's agent and therefore was not entitled to reimbursement of the amounts paid for employment taxes; and
 
 
 4
 3) Whether the district court erred in rejecting the trustee's argument that Terex Corporation should be required to reimburse the trustee for the employment taxes on the grounds of fairness and equity?
 
 
 5
 For the reasons discussed below, we conclude that the district court did not err in any of these rulings, and we therefore affirm the district court's order.
 
 I.
 
 6
 In November 1983, Terex Corporation filed a petition for Chapter 11 Bankruptcy. As a result, all of Terex's assets vested in a bankruptcy estate to be held for the benefit of Terex's creditors. Pursuant to the regular Chapter 11 procedure, Terex became the "debtor in possession" of the estate and administered the estate's business affairs.
 
 
 7
 Shortly after filing for bankruptcy, Terex reduced the wages and salaries of its employees. The employees responded through their collective bargaining agent, the UAW, by filing various claims in the bankruptcy court for the difference between the wages set by the collective bargaining agreement and the wages actually paid.
 
 
 8
 Negotiations between Terex and its creditors, including the employees, eventually produced a reorganization plan. The bankruptcy court confirmed the plan on September 2, 1986, and as a result, in accordance with the Bankruptcy Code, the bankruptcy estate terminated and the assets revested in the new Terex Corporation.[1] See 11 U.S.C. § 1141(b). The plan provided that in full settlement of the various claims against Terex, including the employees' claims, Terex was required to pay certain sums of money directly to the holders of those claims and also to pay $8 million into a trust for future disbursement to certain claimants, including the employees. The plan further provided, however, that Terex would remain responsible for paying "administrative expenses of the kind specified in Section 507(a)(1) of the Bankruptcy Code...."
 
 
 9
 The Terex Reorganization Trust was created by separate agreement on October 31, 1986, and the plaintiff, John Guy, was named trustee. The trust was created for the benefit of certain of Terex's creditors, including the employees, and undertook the tasks of investing the principal paid into it and making payments to the creditors, at times and in amounts determined by the trustee's discretion. Pursuant to the terms of the reorganization plan and the trust agreement, Terex issued stock to the trust, which was later sold by the trustee for approximately $8.1 million. Because the sale price exceeded $8 million, the issuance of this stock to the trust satisfied Terex's funding obligation under the reorganization plan. Under the terms of the agreement, these funds were designated "both for administration as part of the Trust created hereby and for the benefit of the holders of Allowed claims...."
 
 
 10
 In January of 1988, the trustee began to make disbursements from the trust to the creditors. In two payments, the trustee distributed $3,193,508.19 to the hourly employees. The trustee withheld employee income taxes and employee FICA taxes under section 3101 of the Internal Revenue Code. The trustee also paid, under protest, the employer's portion of the FICA taxes, amounting to $239,835.62, and FUTA taxes, amounting to $25,461.82. The trustee also distributed approximately $422,398.50 to salaried and other employees. In addition to withholding the employees' federal income taxes and FICA taxes, the trustee again paid, under protest, the employer's portion of the FICA taxes in the approximate amount of $31,722.13 and FUTA taxes in the amount of $3,379.19.
 
 
 11
 The trustee filed this suit against Terex and the IRS, in the Terex Chapter 11 bankruptcy case, seeking a judgment against the IRS declaring that the trust was not liable for the FUTA taxes and the employer's portion of the FICA taxes. The complaint also sought a determination that the subject taxes were "administrative expenses" entitled to priority under section 507(a)(1) of the Bankruptcy Code and therefore were the responsibility of Terex under the terms of the reorganization plan.
 
 
 12
 The trustee filed a motion for summary judgment against the IRS with respect to the federal tax law issues. The IRS opposed the motion and filed a cross-motion for summary judgment. The bankruptcy court granted summary judgment for the IRS, holding that the trust was an "employer" under the Internal Revenue Code for the purpose of paying employer FICA and FUTA taxes. The trustee does not appeal this order of the bankruptcy court.
 
 
 13
 The trustee then filed a motion for summary judgment against Terex, and Terex filed a cross-motion for summary judgment. The only remaining issue was whether Terex was obligated to reimburse the trustee for the FICA and FUTA taxes. The bankruptcy court granted summary judgment for Terex, and, on appeal, the district court affirmed, holding that the taxes were not "administrative expenses" and that Terex was therefore not obligated to pay them. The trustee now appeals to this court from this order.
 
 II.
 
 14
 We review a grant of summary judgment de novo. See EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). We therefore apply the same standard as applied by the district court. Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The parties do not contest the facts but dispute only the district court's application of the law to the facts.
 
 
 15
 The district court concluded that Terex was not liable for the FUTA taxes and the employer's portion for the FICA taxes. On appeal, the trustee offers three reasons why the district court erred in this conclusion. First, he argues that the taxes are "administrative expenses" under the Bankruptcy Code and therefore the responsibility of Terex under the terms of the reorganization plan. Second, he maintains that as trustee he acted as Terex's agent in paying the taxes and is therefore entitled to reimbursement under the principles of agency law. Finally, he contends that Terex should be required to reimburse the trust for the equitable reason that it is unfair to force the beneficiaries of the trust to pay the employer's taxes. We consider these arguments in order.
 
 A.
 
 16
 The trustee's first argument is that the district court erred in holding that the employment taxes were not administrative expenses under the Bankruptcy Code. He contends that the subject taxes were administrative expenses because they were incurred by the bankruptcy estate under section 503(b)(1)(B) of the Bankruptcy Code. He therefore concludes that Terex must reimburse him for payment of the taxes because the terms of the reorganization plan obligate Terex to pay all of the administrative expenses of the bankruptcy estate.
 
 
 17
 Although Terex concedes that under the reorganization plan it is obligated to pay for all of the administrative expenses of the bankruptcy estate, it contends that these taxes were not administrative expenses of the estate because they were incurred after the estate ceased to exist. As a result, it has no obligation under the reorganization plan to reimburse the trustee for these taxes.
 
 
 18
 The central issue of contention, therefore, is whether the taxes constitute "administrative expenses" under the Bankruptcy Code, because if they do Terex is obligated under the plan to reimburse the trustee for their payment. Section 503(b) of the Bankruptcy Code addresses the allowance of administrative expenses. Within the broad category of "administrative expenses," subsection (b)(1)(B) includes
 
 
 19
 (B) any tax--
 
 
 20
 (i) incurred by the estate....
 
 
 21
 11 U.S.C. § 503(b)(1)(B). The parties dispute whether the employment taxes were incurred by the estate. Terex takes the straightforward position that the disputed taxes could not have been incurred by the bankruptcy estate because they were incurred after the estate ceased to exist. According to Terex, employment taxes are incurred when the wages are paid to the employees. Therefore, because the wages were paid after the bankruptcy estate was terminated, the taxes on those wages were incurred after the termination of the bankruptcy estate.
 
 
 22
 The trustee responds that for the purpose of determining their priority as administrative expenses, employment taxes are incurred not when the wages are paid but when the wages are earned. He concludes that because the wages in this case were earned during the pendency of the bankruptcy estate, any taxes on those wages were incurred at that time and therefore qualify as administrative expenses.
 
 
 23
 Terex has the better argument. In Otte v. United States, 419 U.S. 43, 47 (1974), the Supreme Court considered "the priority to be accorded to withholding taxes on prebankruptcy wage claims" under the old Bankruptcy Act. In Otte, a corporation filed a petition for an arrangement under Chapter XI of the Act, but the arrangement failed and the corporation was adjudicated as bankrupt. A trustee was appointed to administer the bankruptcy estate. During the period for filing proofs of claim against the estate, former employees filed proofs for unpaid wages that had been earned before the filing of the Chapter XI petition. Id. at 45. No proofs of claim were filed for any federal income of FICA taxes on these wage claims. The trustee filed a motion for an order directing distribution to the wage claimants without deductions for any withholding taxes. The case was eventually appealed to the Second Circuit, which held that the trustee was obligated to pay the withholding taxes and that the taxing entities were not required to file proofs of claim. The Second Circuit also held that the tax claimants had priority claims under the old Act.
 
 
 24
 The Supreme Court affirmed. The Court concluded first that a trustee in bankruptcy is an "employer" under the terms of the Internal Revenue Code when he makes wage payments to former employees of the bankrupt, and as an employer, the trustee is obligated to pay withholding taxes. The Court also affirmed the Second Circuit's holding that the taxing entities were not required to file proofs of claim. The Court's reasoning on this issue is crucial to the resolution of the plaintiff's appeal in this case. The Court concluded that the taxing entities did not have to file proofs of claim because their tax claims were directly against the bankruptcy estate and not against the bankrupt corporation. Noting that "[l]iability for the taxes accrues only when the wage is paid," the Court reasoned as follows:
 
 
 25
 The wages that are the subject of the wage claims, although earned before bankruptcy, were not paid prior to bankruptcy. [The corporation] had incurred no liability for the taxes. Liability came into being only during the bankruptcy. The taxes do not partake, therefore, of the nature of debts of the bankrupt for which proofs of claim must be filed.
 
 
 26
 Id. at 55.
 
 
 27
 The significance of this analysis is quite clear. The tax liability for employment taxes is incurred when the wages are paid not when they are earned. Although the facts of this case are different, the same reasoning applies. We must determine whether the taxes paid by the trustee were "administrative expenses" of the bankruptcy estate. Taxes are "administrative expenses" under the new Act if they are incurred by the estate. The Supreme Court held in Otte that tax liability for employment taxes is incurred when the wages are paid not when they are earned. Id. The disputed taxes in this case were on wages that were paid after the bankruptcy estate was terminated. The taxes were therefore not incurred by the estate and are not administrative expenses of the estate. The fact that the wages were earned during the pendency of the estate is simply irrelevant.
 
 
 28
 The logic of this conclusion becomes apparent upon an examination of the Bankruptcy Code's purpose for giving special priority to administrative expenses. Administrative expenses are given priority because they are the actual, necessary costs of preserving the estate. See United States v. Redmond, 36 B.R. 932, 934 (D.Kan.1984). Because there is no need to preserve an estate that has been terminated, costs that are incurred after that time are not administrative expenses of the estate. In Redmond, the court considered whether post-confirmation employment taxes were administrative expenses entitled to first priority under section 503(b) of the Code. Noting that the administration of the bankruptcy estate ceases upon confirmation of the plan, the court held that such taxes were not administrative expenses because "taxes which accrue post-confirmation are not incurred as actual, necessary costs and expenses of preserving the estate pursuant to section 503(b)(1)(B)." Id.; see also In Re Holywell Corp., 911 F.2d 1539, 1544 (11th Cir.1990), rev'd on other grounds, 112 S.Ct. 1021 (1992). The same can be said of the taxes in this case. Because they were incurred by the trustee after the plan was confirmed and the estate ceased to exist, they were not incurred as the actual costs of preserving the estate and therefore cannot be construed as administrative expenses of the estate.
 
 
 29
 The trustee argues that Redmond and Holywell can be distinguished from this case on the ground that in both of those cases, the events giving rise to the taxes occurred after confirmation of the plan. In Redmond, for example, the wages were both earned and paid after the plan was confirmed, while in this case the wages were earned before the plan was confirmed. This argument begs the question of which event gave rise to the tax liability. The answer is that in this case, as in Redmond and Holywell, the event giving rise to tax liability occurred after the estate ceased to exist. That event was the payment of the wages. The trustee can only respond that the taxes were actually incurred when the wages were earned. That argument, however, as we have noted, is directly contradicted by the Supreme Court's holding in Otte.
 
 
 30
 Nevertheless, in support of his novel argument, the trustee cites a number of cases. In re Laub Baking Co., 642 F.2d 196 (6th Cir.1981); In re Bondi's Valu-King, Inc., 126 B.R. 47 (N.D.Ohio 1991); In re Northeastern Ohio Gen. Hosp. Ass'n, 126 B.R. 513 (Bankr.N.D.Ohio 1991). We find that none of these cases supports his argument. We address In re Laub in particular because it is a previous decision of this court.
 
 
 31
 In In re Laub, the court considered whether certain employment taxes were entitled to priority status under the old Bankruptcy Act. 642 F.2d at 197. In that case, the bankruptcy estate paid wages to employees for services rendered before the bankruptcy occurred but did not report or pay any employer's FICA or FUTA taxes based on these wages. Id. The IRS argued that these taxes were entitled to first priority as expenses in the administration of the bankrupt estate. Id. Although the wages on which these taxes were based were paid by the estate, the court held that the tax claims were not entitled to any priority under the old Act. Id. at 199. The court provided no reasoning, however, in support of this conclusion.
 
 
 32
 The trustee attempts to supply the missing reasoning with analysis that supports his position. He argues that the court must have reasoned that the taxes were incurred not when the wages were paid but when they were earned, and since the wages were earned before the estate was created, the taxes on them were not administrative expenses of the estate, even though the wages had been paid by the estate. The trustee contends that by the same logic the taxes in this case were incurred by the estate because they were based on wages that were earned during the pendency of the estate. Although this is a plausible reading of In Re Laub, it is not the only reading. It is also possible that the court simply concluded that taxes of this sort were never construed as administrative expenses under the terms of the old Act. Given that In Re Laub is silent on this point and given that the trustee's reading of this case is inconsistent with the Supreme Court's decision in Otte, we decline to adopt that reading.
 
 
 33
 In summary, the Supreme Court decision in Otte holds that a federal employment tax is incurred when the wage is paid, not when it is earned. The cases cited by the trustee do not clearly indicate otherwise. Consequently, since the wages on which the taxes in this case were based were paid long after the bankruptcy estate ceased to exist, we hold that they were not incurred by the estate and therefore are not administrative expenses of the estate. As a result, Terex is not obligated to reimburse the trustee for their payment under the terms of reorganization plan.
 
 B.
 
 34
 The trustee's second argument is that he was Terex's agent and therefore has a right to indemnification for any tax liability incurred on behalf of Terex. Specifically, he contends that he has a right to indemnification for the FICA and FUTA taxes paid by the trust on the disbursements made to Terex employees.
 
 
 35
 The district court rejected this argument on two alternative grounds. First, the court concluded that the issue had not been raised in the bankruptcy court and therefore could not be considered on appeal in the first instance. See In re Musick Constr., Inc., 34 B.R. 105, 107 (D.Colo.1983). Second, the court held that even if it were to entertain this argument, it would reject it for the simple reason that the trustee was not Terex's agent. The district court reasoned that under the terms of the reorganization plan and the trust agreement, the trustee was not subject to Terex's control and had independent discretionary authority. Indeed, under the terms of the trust agreement, legal title of the trust assets was vested in the trustee. Under general principles of agency law, the agent is subject to the principal's control. Absent this element of control, the trustee cannot be considered to be Terex's agent.
 
 
 36
 We agree with the district court and therefore reject the trustee's agency theory.
 
 C.
 
 37
 The trustee's final argument is that principles of equity require Terex to reimburse the trustee for the FICA and FUTA taxes. The trustee contends that if the trust is required to pay the taxes, Terex will receive a windfall, and the beneficiaries of the trust, the employees, will have to pay their employer's taxes. In addition to being unfair, the trustee argues that Congress never could have intended this result.
 
 
 38
 We disagree. Under the terms of the trust agreement, the trustee contracted to assume liability for expenses associated with administering the trust. Those expenses include the disputed taxes. Moreover, the money paid by Terex into the trust was not earmarked for the exclusive benefit of the employees and other creditors, but rather was "both for administration as part of the Trust created hereby and for the benefit of the holders of Allowed claims." Terex fulfilled its obligation of funding the trust. It is not unfair to make the trustee fulfill his part of the bargain by paying the expenses associated with administering the trust.
 
 
 39
 The trustee's argument with respect to the intent of Congress is equally unavailing. Under the terms of both the reorganization plan and the trust agreement, the trust was responsible for paying the expenses of administering the estate, including both the employees' and the employer's taxes. To the extent that Congressional intent is relevant in interpreting the requirements of the parties' trust agreement, this court has considered an argument similar to the trustee's and rejected it. In In re Laub, the court noted: " 'Had Congress desired to relieve trustees of the liabilities of withholding and paying [taxes] under the circumstances of this case, it could have easily done so. Under these circumstances, we do not opt to read into the relevant statutes that which is not clearly present....' " 642 F.2d at 198-99 (quoting In re Armadillo Corp., 561 F.2d 1382, 1386 (10th Cir.1977)). We reject the trustee's fairness argument in this case for the same reason.
 
 III.
 
 40
 For the reasons discussed, we AFFIRM the order of the district court.
 
 
 
 *
 The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Under the reorganization plan, however, the bankruptcy court retained exclusive jurisdiction over a variety of proceedings, including "any and all controversies and disputes arising under or in connection with the Plan...." Consequently, this suit originated in the bankruptcy court