In re VISI–TRAK, INC., Debtor.

No. 99–14624.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Aug. 24, 2001.

Drew T. Parobek, Vorys, Sater, Seymour & Pease, Cleveland, OH, for HPM Corp.

Mary Ann Rabin, Rabin & Rabin, Cleveland, OH, trustee.

Robert B. Millner, Sonnenschein Nath & Rosenthal, Chicago, IL, for HPM Corp.

Brouse & McDowell, Akron, OH, for Official Committee of Unsecured Creditors.

Baker & Hostetler, Cleveland, OH.

### *ORDER*

RANDOLPH BAXTER, Bankruptcy Judge.

HPM Corporation ("HPM") seeks Payment of an Administrative Claim ("Request"). The Chapter 11 Trustee, Mary Ann Rabin ("Trustee") filed an Objection. The Court acquires core matter jurisdiction over the matter pursuant to 28 U.S.C. §§ 157(a) and (b), 28 U.S.C. § 1334, and General Order Number 84 of this District. Upon the following factual findings and conclusions of law, said request is denied:

The Debtor, Visi–Trak, Inc. ("Debtor"), was the manufacturer of sensors, monitors, and control systems employed in the die-casting and plastics industries.[1] (Flickinger, Direct.) On February 3, 1999, the district court for the Southern District of New York issued an opinion which determined that the Debtor had willfully induced the infringement of certain patents held by one John R. Mickowski ("Mickowski"), and accordingly awarded Mickowski a judgment against the Debtor in the amount of $5,998,627. That judgment precipitated the Debtor's Chapter 11 petition filing on June 15, 1999.

HPM was a pre-petition trade partner of the Debtor, and continued its trade relationship post-petition. On February 17, 1998, Mickowski filed a Complaint for Patent Infringement against HPM in the Dis-

---

1. Pursuant to a Court-approved sale, the business of the Debtor is now maintained by a separate entity named Visi–Trak Worldwide, L.L.C.

trict Court of New Jersey. (Exh. 1.) The gravamen of that Complaint was that HPM willfully infringed upon Mickowski's patents by using, selling, or offering to sell infringing products, including those of the Debtor. (Rice, Direct.)

The procedure by which HPM ordered goods from the Debtor included the completion of a Purchase Order form, the back of which listed "Conditions of Purchase Unless Otherwise Specified." (Exh. 13.) That form was generated by HPM, and the conditions were drafted by HPM's attorneys. (Ullom, Direct.) Included in the Conditions of Purchase was the following provision:

> By accepting this order you agree to defend at your own expense all suits against us or our customers for infringement of any United States patent, copyright or trademark by any material (or manufacture for us or the normal use thereof) covered by this order and will save us or our customers harmless from all expense of defending any such suit and all payments by final judgment therein assessed on account of such infringement except infringement necessary arising from adherence to specifications or drawings which you are directed by us to follow as to such material or residing in parts or supplies furnished by us to you for use hereunder (other than, in each case, items of your design or selection or the same as any of your commercial merchandise).

(Exh. 13–2.)

Mickowski's patent infringement action against HPM has not yet been set for trial in the New Jersey District Court, but HPM has reportedly incurred substantial fees and expenses ($86,541.37) in defending that law suit. Based upon the indemnity provisions in the Conditions of Purchase and § 2–312(3) of the Uniform Commercial Code, HPM asserts a claim in the Debtor's bankruptcy case, though it has filed no proof of claim. The issue before the Court is whether HPM's incurred legal expenses are entitled to administrative expense status pursuant to § 503(b)(1)(A) of the Bankruptcy Code. Actually, the dispositive issues are three-fold: (1) Whether an alleged indemnity claim is entitled to an administrative expense priority under the Bankruptcy Code; (2) Whether HPM has demonstrated any expenses which would qualify as an administrative expense claim; and (3) Whether the conduct between the parties gives rise to an indemnity claim.

Section 503(b) provides, in pertinent part:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

11 U.S.C. § 503(b). The party asserting administrative expense status bears the burden of proving the applicability of § 503(b) by a preponderance of the evidence. *In re Unitcast, Inc.*, 219 B.R. 741, 746 (6th Cir. BAP 1998); *In re Weikel*, 1995 WL 126598 (Bankr.N.D.Ohio 1995) (citing *General Am. Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.)*, 1 F.3d 1130 (10th Cir.1993)). The presumptive validity afforded to properly scheduled or filed claims is not extended to a request for payment of administrative expenses. *In re Fulwood Enters., Inc.*, 149 B.R. 712 (Bankr.M.D.Fla.1993).

Application of § 503(b) is guided by two policies. One is "to facilitate the rehabilitation of insolvent businesses by encouraging third parties to provide those

business with necessary goods and services." *In re N.P. Mining Co., Inc.*, 963 F.2d 1449, 1453 (11th Cir.1992). *See also United Trucking Serv., Inc. v. Trailer Rental Co., Inc. (In re United Trucking Serv., Inc.)*, 851 F.2d 159, 161 (6th Cir. 1988). On the other hand, another "overriding concern [is] with keeping fees and administrative expenses at a minimum so as to preserve as much of the estate as possible for creditors." *Otte v. United States*, 419 U.S. 43, 53, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974).

■■■■ Courts have afforded administrative expense priority under § 503(b) only if: (1) the claim arose from a transaction with the bankruptcy estate; and (2) it directly and substantially benefitted the estate. *Pension Benefit Guar. Corp v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811 (6th Cir.1997). *See also In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir.1987); *Matter of Jartran, Inc.*, 732 F.2d 584 (7th Cir.1984); *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir.1976). "A creditor provides consideration to the bankruptcy estate only when the debtor-in-possession induces the creditor's performance and performance is then rendered to the estate. If the inducement came from a pre-petition debtor, then consideration was given to that entity rather than to the debtor-in-possession." *White Motor Corp., supra*, at 110.

■■■■ Herein, HPM argues that the Debtor is obligated to indemnify HPM's costs of defense, by virtue of post-petition contracts with the Debtor and U.C.C. § 2–312(3). Further, HPM contends that because that obligation arises partially out of post-petition contracts, it is entitled to administrative expense status. In response, the Trustee argues that HPM should not be entitled to administrative expense priority because: (a) HPM is not a supplier of goods but, rather, is a purchaser; (b) the transactions giving rise to the indemnification were pre-petition; and (c) the payment of HPM's legal fees would not benefit the bankruptcy estate.

Section 2–312(3) of the U.C.C. is codified at § 1302.25(C) in the Ohio Revised Code. It provides:

> Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.

Ohio Rev.Code Ann. § 1302.25(C). In this case, the testimony adduced at the evidentiary hearing revealed that HPM regularly added specifications to the orders placed with the Debtor. (Ullom, Court Inq.; Jack Vann, Direct.)

Even if HPM could establish that the Debtor holds an obligation to indemnify, it has not met its burden of proof with regard to the administrative expense priority. First, HPM has not proven by a preponderance of the evidence that its claim arose from a transaction with the bankruptcy estate. HPM and the Debtor entered into an ongoing series of contracts, both before and after the Debtor filed its Chapter 11 petition. Each of those contracts contained the Conditions of Purchase. (Ullom, Direct.) HPM seeks reimbursement for the attorney's fees that are attributable to any infringement arising out of the post-petition contracts. Again, however, with the Mickowski law suit not yet fully adjudicated, HPM cannot demonstrate what fees are attributable to post-petition contracts. The Debtor contends that it altered its product to avoid any infringement after Mickowski obtained his judgment against it on February 3, 1999,

approximately four months pre-petition. (Vann, Direct.) In order for HPM to satisfy the first prong of the "benefit to the estate" test, it would need to establish that its claim arose from an infringing product manufactured by the Debtor, without any specifications provided by HPM, and obtained by virtue of a post-petition benefit or contract. *See Mammoth Mart, supra; Matter of Baldwin–United Corp.*, 43 B.R. 443, 453 (S.D.Ohio 1984) (noting that the dispositive date is that of the underlying contract). Regardless of the veracity of its alleged alterations, HPM has not properly established that its claim arises out of post-petition contracts.

■ Second, HPM has not established a clear benefit to the estate. In its brief, HPM cites to a number of cases in support of its proposition that a breach of a post-petition contract or warranty creates an administrative claim. (HPM Brief, 8–11.) The language of § 503(b) does not, however, support such a broad proposition that all breaches of post-petition contracts are to be afforded administrative priority. Rather, interpretations of § 503(b) and other priority sections have required that they be strictly construed. *Baldwin–United, supra*, at 451 (citing *In re Club Dev. & Mgmt. Corp.*, 27 B.R. 610, 612 (9th Cir. BAP 1982); *In re O.P.M. Leasing Servs., Inc.*, 23 B.R. 104, 121 (Bankr. S.D.N.Y.1982)).

HPM argues that simply by maintaining its status as a trade creditor, it has benefitted the estate by contributing to the reorganization effort. Courts have often allowed administrative expenses where a supplier of goods or services enters a post-petition contract with a debtor in bankruptcy, but that scenario fulfills the policy of aiding "the rehabilitation of insolvent businesses by encouraging third parties to provide those business with necessary goods and services." *N.P. Mining Co.*,

*supra*, at 1453. In the present case, however, HPM is the purchaser of goods. It cites to no authority in support of an administrative expense arising out of a purchase from a debtor-in-possession. Further, the claim in this case is one step further removed from the transaction. Whereas a supplier may be granted an administrative expense for the payment for its supplies, in this case the Debtor has already delivered the goods. No administrative expense is necessary to ensure that the trade creditor receives consideration, because the Debtor has already performed.

Even though the "benefit to the estate" test is the relevant standard to determine whether to accord administrative expense status, case law further weighs against granting such a priority to indemnity claims. Previous opinions discussing the issue of whether an indemnification agreement gives rise to an administrative expense have generally been in the context of indemnification of corporate officers and directors. Most courts have rejected the administrative expense priority of the indemnification. *See In re Amarex*, 853 F.2d 1526 (10th Cir.1988); *In re Christian Life Center*, 821 F.2d 1370 (9th Cir.1987); *Guaranty Nat'l Ins. Co. v. Greater Kansas City Transp. Inc.*, 90 B.R. 461 (D.Kan. 1988); *Balwin–United, supra; In re Philadelphia Mortgage Trust*, 117 B.R. 820 (Bankr.E.D.Pa.1990); *In re Consol. Oil & Gas, Inc.* 110 B.R. 535 (Bankr.D.Colo. 1990); *In re Amfesco Indus., Inc.*, 81 B.R. 777 (Bankr.E.D.N.Y.1988). Those courts that have held that the indemnification agreement does not give rise to an administrative expense have done so because the agreements have not satisfied the "benefit to the estate" test. *See, e.g., Consol. Oil & Gas, supra*, at 537–538 (discussing the standard under *Mammoth Mart*, and opining that "under this concept, the Ap-

plicants are simply not entitled to indemnification as an administrative expense priority. They neither contracted with, served on behalf of, nor benefitted, in any manner, the Debtor–in–Possession"). Herein, HPM did indeed contract with the Debtor in Possession, but the record does not demonstrate that its claim arises out of those transactions, nor any real benefit to the Debtor.

HPM is not entitled to the status of an administrative expense claimant under § 503(b). As a trade creditor of the Debtor, it has not demonstrated where it rendered any services postpetition that preserved the Debtor's estate. Indeed, HPM did nothing more than any other of the Debtor's trade creditors in an ordinary course of business relationship. That is, HPM ordered product from the Debtor, and the Debtor provided the product upon HPM's specifications.

■ Although it is unnecessary for this Court to reach the issue of whether HPM holds an indemnity claim against the Debtor, no such claim was held by HPM. As the purchase agreement provided, the Debtor would be held harmless on any product it manufactured for HPM upon HPM's specifications. The evidence adduced clearly demonstrated that the product manufactured by the Debtor and sold to HPM was made pursuant to HPM's specifications; HPM's own Conditions of Purchase state: "By accepting this order you hereby warrant that the material to be furnished hereunder will be in full conformity with the specification, drawing or sample." (Exh. B.) Thusly, the subject indemnity clause is not triggered, nor is any liability imposed against the Debtor under U.C.C. § 2–312(3).

■ Two final matters further support the denial of HPM's Request. First, "a claim will be afforded priority 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.'" *Frito–Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.),* 10 F.3d 944 (2d Cir.1993) (quoting *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 101 (2d Cir.1986)). The testimony adduced at the evidentiary hearing revealed that HPM has not regularly supplied the underlying consideration; at present, HPM owes the Debtor approximately $40,000. (Flickinger, Cross–Exam.) Second, the evidence shows that a separate company named HPM Stadco, Inc. has paid $128,154.85 of the expenses for which HPM now seeks indemnification. (Exh. 11–10.) No evidence was presented to show that the Debtor has any obligation to indemnify the expenses incurred by HPM Stadco, Inc., nor does the record reflect that HPM reimbursed HPM Stadco, Inc. for that payment.

### *Conclusion*

HPM has failed to establish that it is entitled to administrative expense priority for its payment of attorneys' fees in defense of litigation with Mickowski. The record does not reflect that HPM's claim for indemnification arises out of a post-petition transaction, nor that it has benefitted the estate.

Accordingly, the Request for Payment of Administrative Expense is hereby denied.

**IT IS SO ORDERED.**

### *JUDGMENT*

An Order having been rendered by the Court in these proceedings,

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that HPM Corporation's Request for Payment of Ad-

378

ministrative Expenses is hereby denied. Each party is to bear its respective costs.